THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DIANA DOSS, Defendant-Appellant.

First District (2nd Division)   No. 1—88—3320

Opinion filed June 11, 1991.

Randolph N. Stone, Public Defender, of Chicago (Karen E. Tietz, Assistant Public Defender, of counsel), for appellant.

John O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Following a bench trial, defendant was convicted of first-degree murder. (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a).) On appeal, she contends that (1) the evidence failed to support her conviction, and (2) the Illinois statutory scheme for murder is unconstitutional. We affirm, for reasons which follow.

Nettie Doss, defendant's mother, testified that on August 26, 1987, she left home to buy pain medicine and pads for defendant, who complained of severe menstrual cramps. When she returned home, defendant was in bed. Nettie heard a cry in her kitchen and discov-

ered a newborn baby on top of the trash can, wrapped in a plastic garbage bag. She immediately took her daughter and the baby to the hospital.

Nettie did not know that defendant was pregnant; defendant continued to wear her regular clothes and her abdomen never became enlarged. Defendant had turned 15 years old earlier in the month. Although her menstrual cycle was often irregular, she did menstruate lightly in June 1987.

Penny Higgins, a registered nurse on duty when defendant arrived at the hospital, testified that the newborn baby was cyanotic, had blue digits, was blue around the mouth due to a lack of oxygen, and had sustained two puncture wounds on its chest. The umbilical cord was gone, leaving a gaping hole in the baby's abdomen. Defendant claimed that as she walked into the bathroom, the baby fell out of her and onto a pair of scissors. When Higgins asked if she had noticed her abdomen enlarging or the baby's prenatal movements, defendant did not answer and turned away.

Chicago police officer Lorenda Gamble spoke with defendant shortly after she was admitted to the hospital. Defendant told her that she had gone to the bathroom, and when she stood up from the toilet, the baby dropped out of her and onto a pair of scissors. She had not known that she was pregnant.

Lucille Robinson, a child protection investigator for the Department of Children and Family Services, interviewed defendant on August 27, 1987. Defendant had not been aware of her pregnancy until her eighth month and had received no prenatal care. She told Robinson that prior to the baby's birth, she had felt menstrual cramps and thought she had to use the toilet. When she stood up, the baby came out. Defendant held the baby in a towel while she used a knife and scissors to cut the umbilical cord. She thought the baby was dead because it made no noise.

Chicago police detective Ronald Mudry investigated defendant's apartment following this incident. He found a pair of pinking shears and a steak knife in the bathroom sink, which was filled with water. A red-stained towel was on the bathroom floor, and there were red stains in the bathtub. The floor appeared to have been recently cleaned, and the mop behind the bathroom door was wet. Mudry also recovered a black plastic garbage bag from the kitchen floor.

Chicago police detective Richard Schak testified that defendant, at the hospital on the evening of August 27, 1987, told him that she had noticed a foot or a leg protruding from her vagina. She went into the bathroom and gave birth while standing. When she could not cut

the umbilical cord with a knife, she used scissors. She then wrapped the baby in a plastic garbage bag and placed it in a trash can in the kitchen. Defendant said she did not know how the baby received the puncture wounds.

The parties stipulated that the baby died at 6:52 a.m. on August 27, 1987, from stab wounds to the chest.

Dr. Vernon Cook, a physician who specialized in obstetrics and gynecology, testified as an expert for defendant. He stated that young women may initially have irregular menstrual cycles for up to two years. Many women experience bleeding throughout pregnancy which may appear to be menstrual periods. Further, it is possible for a woman to be unaware of her own pregnancy. He had attended women who denied their pregnancy while in labor. On cross-examination, Cook admitted that he had neither examined defendant nor seen her medical records.

The circuit court found that defendant had intentionally stabbed the baby, and adjudged her guilty of first-degree murder. Defendant was sentenced to 20 years in custody of the Department of Corrections.

I

Defendant claims that her conviction of first-degree murder is not supported by the evidence and she should have been convicted of involuntary manslaughter.

■■ The relevant mental state for first-degree murder is that in performing the acts that cause death, an accused knows that such acts create a strong probability of death or great bodily harm. (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(2).) An accused need not be shown to have had specific intent to kill or do great bodily harm or to have known with certainty that her acts would achieve those results; it is sufficient to show that she voluntarily and willfully committed an act, the natural tendency of which was to destroy another's life. *People v. Bartall* (1983), 98 Ill. 2d 294, 307, 456 N.E.2d 59.

■■ One who unintentionally kills another without lawful justification commits involuntary manslaughter if she recklessly performs acts that are likely to cause death or great bodily harm to another. (Ill. Rev. Stat. 1989, ch. 38, par. 9—3(a).) First-degree murder and involuntary manslaughter have inconsistent mental states, as the latter is an unintentional killing. *People v. Hoffer* (1985), 106 Ill. 2d 186, 194-95, 478 N.E.2d 335.

■■ Here, the evidence showed that defendant secretly gave birth to the baby. She attempted to cut the umbilical cord with a knife and

scissors, and ultimately ripped the cord from the baby's abdomen. The baby was stabbed twice in the chest, placed in a plastic trash bag, and on a garbage can. Defendant's explanations of the baby's wounds were inconsistent. She initially claimed that the baby fell onto the scissors, and then said she did not recall how the injuries occurred. She contends on appeal that she unintentionally stabbed the baby while trying to cut the umbilical cord. The evidence, however, supports the finding of a deliberate attempt to dispose of an unwanted child, rather than an accidental death.

Defendant relies on *People v. Ryan* (1956), 9 Ill. 2d 467, 138 N.E.2d 516, and *People v. Weeks* (1983), 115 Ill. App. 3d 524, 450 N.E.2d 1351, both of which are distinguishable. In *Ryan*, defendant was charged with both murder and involuntary manslaughter in the death of her newborn baby. A jury found defendant guilty of involuntary manslaughter, and the supreme court affirmed that verdict. The court noted that even though defendant might have been convicted of murder, the question was for the jury to determine. (*Ryan*, 9 Ill. 2d at 476.) In *Weeks*, defendant passed out after secretly giving birth, and her newborn baby died a short time later, apparently from neglect. The appellate court reversed defendant's involuntary manslaughter conviction, holding that the State had not proved that defendant had acted recklessly. (*Weeks*, 115 Ill. App. 3d at 529.) Neither case supports defendant's argument that she should have been convicted of involuntary manslaughter. Further, *Weeks* was based on the reasonable hypothesis of innocence theory, which has since been abolished in Illinois. See *People v. Pintos* (1989), 133 Ill. 2d 286, 291, 549 N.E.2d 344.

The circuit court here concluded that defendant intentionally inflicted wounds which created a strong probability of the baby's death. At a bench trial, the judge weighs the evidence and draws reasonable inferences therefrom. (*People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317.) The circuit court's findings will not be overturned unless the evidence is so unreasonable or improbable that it leaves a reasonable doubt of defendant's guilt. (*Pintos*, 133 Ill. 2d at 290-92; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) At bar, there is no reasonable doubt of defendant's guilt.

■ Defendant alternatively contends that based on her shock and fear of family disgrace, she unreasonably believed the killing was justified, and therefore she should have been convicted of second-degree murder. (Ill. Rev. Stat. 1989, ch. 38, par. 9—2 (section 9—2).) An accused is guilty of second-degree murder when she commits first-degree murder, but is able to prove either that she was acting under a

sudden and intense passion resulting from serious provocation, or she believed the circumstances, if they existed, justified the killing. (Ill. Rev. Stat. 1989, ch. 38, par. 9—2(a).) There is no evidence of either mitigating factor in this case.

■■ The only recognized categories of serious provocation that, if proved, would reduce a killing from first- to second-degree murder are substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse. (*People v. Fausz* (1983), 95 Ill. 2d 535, 539, 449 N.E.2d 78.) None of these categories is present here. Further, the supreme court has explicitly held that a young child cannot cause the serious provocation required of second-degree murder. See *People v. Crews* (1967), 38 Ill. 2d 331, 336, 231 N.E.2d 451.

Section 9—2 provides that the defense of justification must be based on the principles listed in Article 7 of the Criminal Code. (Ill. Rev. Stat. 1989, ch. 38, par. 9—2(a)(2); see Ill. Rev. Stat. 1989, ch. 38, par. 7—1 *et seq.*) The enumerated defenses in Article 7, however, cannot justify defendant's use of force. She was not acting in self-defense. (See Ill. Rev. Stat. 1989, ch. 38, par. 7—1.) The defense of compulsion is unavailable to an accused charged with first-degree murder. (*People v. Gleckler* (1980), 82 Ill. 2d 145, 155-57, 411 N.E.2d 849; see Ill. Rev. Stat. 1989, ch. 38, par. 7—11.) Finally, the defense of necessity cannot justify the baby's killing, which is a far greater injury than any disgrace defendant might suffer as a result of giving birth. (See *People v. Gindorf* (1987), 159 Ill. App. 3d 647, 660-61, 512 N.E.2d 770, *appeal denied* (1987), 117 Ill. 2d 548; Ill. Rev. Stat. 1989, ch. 38, par. 7—13.) The facts of this case, therefore, make it legally impossible for defendant to have committed second-degree murder.

## II

Defendant argues that the Illinois statutory scheme of first- and second-degree murder is unconstitutional because it violates due process, equal protection, and the separation of powers clause. A defendant is guilty of second-degree murder when she commits first-degree murder but is able to prove by a preponderance of the evidence the presence of a valid mitigating factor. Ill. Rev. Stat. 1989, ch. 38, par. 9—2.

■■ ■ Initially, the State challenges defendant's standing to attack the constitutionality of section 9—2. Standing to challenge the validity of a statute exists if she has sustained, or is in immediate danger of sustaining, some direct injury as a result of enforcement of the statute. (*People v. Ziltz* (1983), 98 Ill. 2d 38, 41, 455 N.E.2d 70.)

In challenging the constitutionality of a criminal statute, defendant generally must bring herself within the class directly aggrieved by the alleged unconstitutionality. (*People v. Palmer* (1986), 141 Ill. App. 3d 234, 238, 490 N.E.2d 154, *appeal denied* (1986), 113 Ill. 2d 566.) Here, defendant's challenge is based on the burden of proof which that statute imposes on her with regard to the mitigating factors. There is no evidence of either of the mitigating factors which would support a conviction of second-degree murder. The evidence cannot support a defense of justification. Further, defendant could not have been provoked by the actions of a newborn baby. (See *Crews*, 38 Ill. 2d at 336.) Defendant, therefore, was not in danger of sustaining a direct injury as a result of enforcement of section 9—2 and lacks standing to challenge that provision.

Assuming, *arguendo*, that defendant had standing to challenge section 9—2, her argument fails. The constitutionality of the Illinois murder statute has been upheld on four separate occasions. (See *People v. Gore* (1991), 212 Ill. App. 3d 984; *People v. Clark* (1991), 207 Ill. App. 3d 439, 565 N.E.2d 1373; *People v. Jerome* (1990), 206 Ill. App. 3d 428, 564 N.E.2d 221; *People v. Buckner* (1990), 203 Ill. App. 3d 525, 561 N.E.2d 335, *appeal denied* (1991), 136 Ill. 2d 547.) Those four cases address and refute all of the constitutional arguments presented by defendant, and she has offered no valid reason for departing from those precedents.

For the reasons stated above, there are no bases for overturning the circuit court's decision. Accordingly, we affirm.

Affirmed.

SCARIANO, P.J., and DiVITO, J., concur.