THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERNEST WILLIAMS, Defendant-Appellant.

First District (5th Division)   No. 1—90—1532

Opinion filed April 30, 1993.

Rita A. Fry, Public Defender, of Chicago (Vicki Rogers, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Judy DeAngelis, and Kurt Smitko, Assistant State's Attorneys, of counsel), for the People.

JUSTICE COUSINS delivered the opinion of the court:

Defendant, Ernest Williams (defendant), appeals the conviction of murder and 22-year imprisonment sentence rendered against him following a bench trial.

The issues presented for review are: (1) whether defendant was deprived of effective assistance of counsel pursuant to Federal and State constitutional guarantees, (a) whether defense counsel's cross-examination of a witness constituted ineffective assistance of counsel, and (b) whether a conflict of interest existed because defense counsel represented defendant and codefendant; (2) whether the trial court misapplied the weight given to defense witnesses called to demonstrate decedent's propensity for violence; (3) whether the trial court erred in finding that defendant was the aggressor; and (4) whether defendant was proven guilty of first degree murder beyond a reasonable doubt.

Affirmed.

BACKGROUND

On the night of March 5, 1988, police officers found Aaron Mack's (decedent's) body. He had been shot to death.

Prosecution witness Marvin Harris (Harris) testified that earlier that evening, he had received a telephone call from Andre Williams (codefendant), defendant's brother, who informed him that Harris' ex-girl friend was at the Williams home. Harris went to Williams' home, exchanged words with his ex-girl friend, tussled with her and, consequently, was asked to leave the premises. Harris obliged.

Harris thereafter went to a pool hall. Codefendant and defendant arrived approximately 15 minutes later. Codefendant approached Harris and asked him if he called his ex-girl friend a name. Harris answered in the negative. Thereafter, a fist fight ensued between codefendant and Harris. Defendant and others from Harris' group started fighting also.

After this brief altercation, Harris' group went to a fast-food chicken restaurant. Defendant and codefendant went home. According to defendant, he did not enter his home. Five to ten minutes later, defendant and codefendant returned to the chicken restaurant.

Harris' group stepped outside of the chicken restaurant and started arguing with defendant and codefendant. Harris' group was armed with bottles. Codefendant pulled out a gun and gave it to defendant.

Harris testified that defendant told Carey Taylor (Taylor), a member of Harris' group, that he was going to kill him. Defendant drew a pistol and started shooting. Defendant shot at Taylor three times. Defendant and codefendant left after Taylor informed the group that defendant was shooting blanks.

Harris' group followed defendant and codefendant up to a point and then retreated to the chicken restaurant. Approximately five minutes later, defendant, codefendant, and a young man named Troy Dortch (Dortch) returned to the exterior of the chicken restaurant. Armed with sticks, Harris' group left the restaurant. Dortch threw a punch at Taylor. At this point, Harris flagged down decedent as he was driving by in a car. Decedent stopped his car. Taylor then removed a carjack from decedent's trunk and threw it at codefendant.

Defendant, codefendant, and Dortch started walking away. Harris' group, which included decedent, started following them on the opposite side of the street. Each group was shouting at the other.

Decedent entered the street indicating that he would go "head up" with any member of defendant's group. To "head up" is a collo-

quialism which means to fight. Decedent started walking in the street; defendant started walking in the street.

Decedent began to remove his coat while defendant drew his gun and fired a shot into the air. Decedent started walking toward defendant, and defendant fired three more shots at or near decedent. Decedent continued to walk toward defendant and grabbed defendant. Codefendant grabbed decedent, and defendant hit decedent across the face with the gun. Decedent fell to the ground and died. Some members of Harris' group stayed with decedent's body until the police arrived.

Defense witness Sidney Brown testified that decedent's hands were inside his coat as he approached defendant and that someone told the decedent that defendant's gun contained blanks.

Defendant testified that when decedent asked to fight, defendant asked him why he should fight him because he did not know him. According to defendant, decedent started running toward him with something in his hands. That something later turned out to be a soup ladle wrapped in black tape. Defendant testified that he was afraid and fired one shot into the air, then fired a shot to the left of decedent. Defendant testified that he was not aiming at decedent but decedent kept running towards him. Defendant fired the third shot to the right of decedent, but decedent kept running toward defendant. After the fourth shot, decedent grabbed defendant, pulled defendant's jacket over his head, and started wrestling with defendant.

Midway into defendant's trial, the court heard codefendant's bench trial. Codefendant was charged with unlawful use of a weapon in connection with the murder of decedent. The trial court noted that although defendant's and codefendant's cases were distinct, some of the evidence applied to both cases. The trial court stated that each defendant would be tried on evidence admissible to each party and that any evidence which would not be admissible as to a defendant would not be used against him.

The People called a detective from the Chicago police department to testify. The detective testified that codefendant informed him of the gun's location. The detective found the gun at the specified location and later identified it in court.

On cross-examination, defense counsel asked the detective whether codefendant had told him that he or defendant ever reloaded the gun at any time. The detective replied in the negative to both questions.

On redirect, the detective testified that codefendant told him that defendant asked decedent to step into the street and defendant fired

his gun at decedent several times. The detective stated that codefendant told him that decedent grabbed defendant and decedent was hit over the head with the gun.

The court found codefendant to have been in possession of a weapon on March 5, 1988, and that he had been previously convicted of a felony. The court found codefendant guilty of unlawful use of a weapon.

Defendant's trial resumed with a series of stipulations that, if the forensic pathologist were called to testify, he would state that he performed an autopsy on decedent and found a single shot wound to the chest with an exit through his back. There was injury to the heart, right lung, and liver. The forensic pathologist deemed the manner of death to be a homicide.

Other witnesses testified, then the People rested. Defendant filed a motion for directed verdict which was denied. Defendant then proceeded on a self-defense theory. Defendant presented testimony of two people who, as they were driving by a high school, observed a fight between two girls. One girl was knocked to the ground and a number of males began hitting and kicking the girl who had fallen. As the witnesses identified decedent as being one of the culprits, defense counsel called them to demonstrate decedent's propensity for violence.

Both witnesses testified that they based their identifications on the type of clothing that decedent was wearing and his profile as he was running away. A police officer testified that the two witnesses positively identified decedent as being one of the culprits.

The People filed a motion *in limine* to strike the testimony of the two defense witnesses and the police officer's testimony regarding decedent's propensity for violence. The motion was denied.

However, relative to the testimony of the two defense witnesses, the court stated:

> "The testimony from those two witnesses would certainly never meet the standard of proof beyond a reasonable doubt. It was not even clear and convincing evidence.
>
> The two people who testified who were eye-witnesses to the event that later they made an identification of Aaron Mack were so weak that it is clear that I cannot find in anyway that it was Aaron Mack who, in the past, had used the aggression against a young women [*sic*] because the evidence is just not there."

The court found defendant guilty of murder, denied defendant's motion for a new trial, and sentenced him to a 22-year-imprisonment term in the Illinois Department of Corrections.

OPINION

I

Defendant first contends that he was deprived of effective assistance of counsel pursuant to Federal and State constitutional guarantees. We disagree.

A

Specifically, defendant contends that defense counsel's cross-examination of a witness constituted ineffective assistance of counsel.

The benchmark for judging claims of ineffectiveness of counsel is whether counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington* (1984), 466 U.S. 668, 686, 80 L. Ed. 2d 674, 692-93, 104 S. Ct. 2052, 2064.

In assessing the effectiveness of counsel, Illinois courts have adopted the guidelines set out by the United States Supreme Court in *Strickland.* To establish ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient and fell below an objective standard of reasonableness, and (2) counsel's erroneous conduct was prejudicial to the defense. (*Strickland,* 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *People v. Collins* (1985), 106 Ill. 2d 237, 273, 478 N.E.2d 267.) However, a court is not required to determine whether counsel's performance was deficient before examining whether the petitioner was prejudiced by the alleged deficiencies. (*Strickland,* 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *People v. Albanese* (1984), 104 Ill. 2d 504, 527, 473 N.E.2d 1246.) A petitioner must show actual prejudice, and unless there is a reasonable possibility that but for counsel's errors the result would have been different, a new trial will not be granted. *People v. Enoch* (1988), 122 Ill. 2d 176, 202, 522 N.E.2d 1124.

When evaluating ineffective assistance of counsel claims, there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. (*Strickland,* 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.) A claim of ineffective assistance of counsel cannot be based on mere conjecture. (*People v. Gierbolini* (1984), 128 Ill. App. 3d 794, 797, 471 N.E.2d 625.) Effective assistance of counsel refers to competent, not perfect, represen-

tation. *People v. Balfour* (1986), 148 Ill. App. 3d 215, 227-28, 498 N.E.2d 547.

Also, it has been established that an attorney's decision on whether to file a motion to suppress is a matter of trial strategy which is to be given great deference. (*People v. Bryant* (1989), 128 Ill. 2d 448, 458, 539 N.E.2d 1221.) Since it is a matter of trial strategy, it has no bearing on the issue of competency of counsel. (*People v. Davidson* (1990), 196 Ill. App. 3d 634, 638, 554 N.E.2d 444.) Defendant must establish that his counsel's actions in not filing the motion so prejudiced him that, but for this conduct, the outcome would have been different. (*People v. Johnson* (1986), 143 Ill. App. 3d 34, 43, 492 N.E.2d 574; *People v. Atkins* (1987), 161 Ill. App. 3d 600, 608, 515 N.E.2d 272.) Here, defendant cannot demonstrate that he was prejudiced by his counsel's failure to file a motion to suppress.

Defendant contends that defense counsel was ineffective for failing to file a motion to suppress statements made by codefendant to a detective (Detective Schalk). Codefendant's statements were elicited through Detective Schalk, who stated that codefendant informed him that defendant requested decedent to step into the street to fight.

█ The People maintain that the filing of a motion to suppress is a matter of trial strategy and has no bearing on the effectiveness of trial counsel. We agree. The statements that codefendant made were harmless where the trial court did not consider them in its finding and in light of the overwhelming evidence presented at trial which supports defendant's conviction for murder.

Codefendant's statement was elicited through testimony of the detective, who stated that codefendant informed him that defendant requested the decedent to step into the street to fight. This statement is contrary to testimony given by three eyewitnesses.

Further, defendant's contention that defense counsel was ineffective by failing to file a motion to suppress this statement of codefendant is without merit. Defense counsel made the trial court aware of the statement and requested that it not be considered against defendant to which the court agreed. Defense counsel took the necessary steps short of filing a formal motion to suppress to ensure that defendant was not prejudiced by the statement.

█ Additionally, defendant's contention that codefendant's statement was in violation of the confrontation clause is without merit. The confrontation clause of the sixth amendment guarantees the right of a criminal defendant to be confronted with the witnesses against him, essential to which is the right to test the truth of their assertions through cross-examination at trial. (*Pointer v. Texas* (1965), 380 U.S.

400, 404, 13 L. Ed. 2d 923, 926, 85 S. Ct. 1065, 1068; see also *People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738 (defendant must be afforded his right to confront party whose assertions are offered to prove the truth of the matter asserted).) Here, codefendant's statement was not a "witness against defendant" because the statement was not elicited for its truth, but elicited simply to demonstrate the course of the police investigation. (*People v. Trice* (1991), 217 Ill. App. 3d 967, 976-77, 577 N.E.2d 1195.) Therefore, defendant's right to confront adverse witnesses was not violated where there was no adverse witness to confront.

Moreover, it has been held that a trial judge is presumed to know the law and only consider competent and admissible evidence. (*People v. Gilbert* (1977), 68 Ill. 2d 252, 258, 369 N.E.2d 849.) This presumption may only be rebutted where the record affirmatively establishes that the trial judge in fact considered inadmissible evidence. (*Gilbert*, 68 Ill. 2d at 259.) And where a trial court explicitly states in a joint trial that it will not consider inadmissible evidence, and the record supports the judge's admonition, a defendant cannot claim that he has been denied a fair trial. *People v. Monroe* (1984), 125 Ill. App. 3d 592, 595, 466 N.E.2d 393.

In *Monroe*, four defendants were jointly tried for rape. Each made statements implicating the other. The trial judge admitted the statements. However, he explicitly stated that he would not consider what one said against the other. (*Monroe*, 125 Ill. App. 3d at 595.) On appeal, the defendants claimed they were prejudiced by the reading of the unexcised statement. The appellate court rejected the defendants' claims, noting that the trial court said it would not consider evidence which would violate the *Bruton* (*Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620) rule. (*Monroe*, 125 Ill. App. 3d at 595.) The *Monroe* court recognized that defendants failed to overcome the heavy presumption that the trial court only considered competent evidence.

Also apposite is *People v. Davis* (1983), 97 Ill. 2d 1, 452 N.E.2d 525. In *Davis*, the defendant was tried together with his codefendant, Holman. Defendant was tried by the court and Holman by a jury. At trial, Holman's confession, which implicated the defendant, was admitted into evidence. However, the trial judge explicitly stated that he would not consider that portion of the confession which implicated the defendant. Defendant was convicted, and on appeal argued that, based on *Bruton*, he was denied a fair trial. The Illinois Supreme Court rejected the defendant's claim and held that there was no reversible error since the trial judge, sitting as the trier of fact, clearly

**1034**

stated that he would not consider the portion of the statement which implicated the defendant as evidence against the defendant. (*Davis*, 97 Ill. 2d at 22.) Thus, *Davis* held that the defendant received a fair trial since the trial court declared it would not consider incompetent evidence and nothing in the record reflected otherwise.

In *People v. Moore* (1984), 128 Ill. App. 3d 505, 470 N.E.2d 1284, the defendant and codefendant were tried jointly before a judge and convicted of armed violence, voluntary manslaughter, and concealment of a homicidal death. On appeal, the defendant claimed he was denied a fair trial because the trial court denied his severance motion. The *Moore* court rejected the defendant's argument and noted that the trial judge, sitting as the trier of fact, "due to his particular training and experience, is generally believed to have a greater ability to restrict his use of improper evidence and to consider only competent evidence." (*Moore*, 128 Ill. App. 3d at 514.) The court noted that the learned trial judge admonished defendants that any statement made by a codefendant admitted into evidence would only be considered against the declarant. Thus, the court held that the defendant received a fair trial.

We find that the case at bar closely parallels *People v. Schmitt* (1989), 131 Ill. 2d 128, 545 N.E.2d 665, where the defendant and codefendant were tried in simultaneous but separate bench trials. There was an agreement prior to trial that evidence admissible only as to defendant Schmitt would not be considered against codefendant Nielson. On appeal, the defendant argued that the trial court had considered the codefendant's statement in determining his guilt. The Illinois Supreme Court, in reversing the appellate court, held that "there is nothing in the record to indicate the court in this case relied upon post-arrest statements of Schmitt, oral or written, wherein he named Nielson as his drug source. To the contrary, the court repeatedly assured Nielson that it would not consider such statements against him." *Schmitt*, 131 Ill. 2d at 138.

■ In the case at bar, the record establishes that the trial court considered only competent evidence. At the outset of codefendant's trial, defense counsel asked the court not to consider the statements of codefendant against defendant. The trial judge agreed, stating that "any evidence that would not be admissible to one of the defendants would not be used against him." The trial judge, in her finding, never indicated that she used codefendant's statement in reaching her decision. In fact, the trial court stated that "[t]he Harris group said let's go head to head." The trial court also stated that decedent went into the street and began to move toward the defendants and their group

so that they could fight. This is contrary to what codefendant's statement had suggested.

Further, the Illinois Supreme Court, in *Schmitt*, rejected the appellate court's application of the *Bruton* analysis to bench trials:

> "Unlike the court in *Bruton*, we are not concerned here with the efficacy of jury instructions in eliminating the prejudice to a defendant that arises from the use at a joint trial of a nontestifying codefendant's inculpatory statement ***." (*Schmitt*, 131 Ill. 2d at 138.)

Clearly, defendant's reliance on *Bruton* as being applicable to bench trials is misguided since it is clear that in Illinois, the *Bruton* analysis is inapplicable where the trier of fact is a judge.

Defendant's reliance on *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056, is also misguided. In *Lee*, the court held that the trial court's reliance on a codefendant's uncross-examined confession denied defendant a fair trial. The court reversed the defendant's conviction because the trial judge erroneously relied on the codefendant's confession. However, in *Lee*, the court based its decision on the fact that the trial court expressly relied on portions of the codefendant's confession in finding the defendant guilty. Thus, it was clear from the record and undisputed that the trial court had indeed considered the codefendant's confession as substantive evidence.

Here, there is nothing in the record that indicates that the trial court considered incompetent evidence. The record plainly establishes that the trial court separated the evidence and considered competent evidence as to each defendant.

The two questions asked of the detective on cross-examination were a matter of trial strategy and as such are inappropriate for review.

It has been established that any allegations of incompetency of counsel in regards to cross-examination are questions of trial strategy, the exercise of professional judgment, and matters within trial counsel's discretion and, as such, are not subject to review by a reviewing court. (*People v. Harris* (1988), 123 Ill. 2d 113, 157, 526 N.E.2d 335.) Trial counsel is entitled to great deference by a reviewing court in any evaluation of his conduct. (*People v. Mitchell* (1984), 105 Ill. 2d 1, 12, 472 N.E.2d 1270.) Review of trial tactics or strategy will generally not extend to these areas "even where appellate counsel or the reviewing court might have handled the matter differently." (*People v. Barfield* (1989), 187 Ill. App. 3d 190, 197, 543 N.E.2d 812.) "[T]he fact that a tactic in retrospect proved unsuccessful does not demonstrate incompetence." (*Barfield*, 187 Ill. App. 3d at 197.) The two

questions asked of the detective were relevant and could be considered matters of trial strategy.

## B

Defendant contends that a conflict of interest was demonstrated by defense counsel's joint representation of defendant and codefendant and, therefore, defendant was denied effective assistance of counsel. We disagree.

Joint representation of codefendants is not a *per se* violation of the sixth and fourteenth amendment right to effective assistance of counsel. (*People v. Vriner* (1978), 74 Ill. 2d 329, 337, 385 N.E.2d 671.) The United States Supreme Court has established that in order to maintain a claim of ineffective assistance of counsel based on joint representation, the defendant must establish the existence of an actual conflict which has adversely affected his lawyer's performance. (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 348, 64 L. Ed. 2d 333, 346-47, 100 S. Ct. 1708, 1718.) This standard has been adopted by the Illinois Supreme Court where the burden is placed on the defendant to show with some specificity that an actual conflict of interest adversely affected his representation. (*People v. Jones* (1988), 121 Ill. 2d 21, 29, 520 N.E.2d 325; *People v. Washington* (1984), 101 Ill. 2d 104, 112, 461 N.E.2d 393.) "Hypothetical or speculative conflicts will not suffice to establish a violation." (*Jones,* 121 Ill. 2d at 29.)

> "Where the record presents no indication that the defense of either codefendant was inhibited to any degree because of the joint representation, a reversal of a conviction is not required." (*Jones,* 121 Ill. 2d at 30.)

Defendant has failed to demonstrate how defense counsel had a conflict of interest because of joint representation.

■ Defendant has not established that he was prejudiced by any alleged deficiencies in his counsel's representation. Codefendant's statement could not have prejudiced defendant because it was not offered for the truth of the matter asserted; the trial court expressly stated that it would not consider any evidence that was inadmissible against defendant during codefendant's bench trial; the trial court never considered codefendant's statement in its findings; and finally, the joint representation of defendant and codefendant did not present a conflict of interest.

Therefore, defendant has failed to satisfy the two-prong *Strickland* test for ineffective assistance of counsel. Thus, defendant received effective assistance of counsel.

## II

Defendant next contends that the trial court misapplied the weight given to defense witnesses called to demonstrate decedent's propensity for violence. We disagree.

When a defendant presents a defense such as self-defense, he may rely on the victim's propensity for violence. (*People v. Lynch* (1984), 104 Ill. 2d 194, 199-200, 470 N.E.2d 1018.) However, one can only consider facts one knows, and evidence of the victim's character is irrelevant to the self-defense theory unless defendant knew of the victim's violent nature. (*Lynch*, 104 Ill. 2d at 200.) Once this evidence is presented, it is presumed that the trial court will only consider competent evidence in reaching its decision. (*People v. Coleman* (1991), 212 Ill. App. 3d 997, 1006, 571 N.E.2d 1035.) The judge will then weigh the evidence and draw reasonable conclusions therefrom. (*People v. Doss* (1991), 214 Ill. App. 3d 1051, 1055, 574 N.E.2d 806.) It is well settled that

> "[i]n a bench trial, it is for the trial judge to determine the credibility of witnesses, to weigh the evidence, draw reasonable inferences therefrom, and to resolve conflicts in that evidence." *People v. Ocasio* (1990), 205 Ill. App. 3d 157, 162-63, 562 N.E.2d 549.

Determinations as to weight and credibility given to a witness in a bench trial are an exclusive function of the trial court and a court of review will not disturb these determinations unless manifestly erroneous. (*People v. Gentile* (1990), 205 Ill. App. 3d 952, 958, 563 N.E.2d 926.) Here, the determination by the trial court that the lineup identification was not reliable was not manifestly erroneous as evidenced by the facts in this case.

█ The court did not find this identification to be conclusive and with good cause. One witness testified that he observed approximately 12 to 15 young men kicking a girl. The other witness testified that he saw four to five young men hitting the girl. Both witnesses filed a police report and each viewed a lineup. Both witnesses identified decedent from the lineup. However, the witnesses testified that their identifications were based on the clothing that decedent was wearing and not his face. The witnesses also testified that they were only able to observe decedent from the side and back.

Further, defendant testified that he did not know decedent.

## III

Defendant further contends that the trial court erred in concluding that he was the aggressor. We disagree.

In a bench trial, it is presumed that the trial judge has considered only competent evidence in reaching his or her decision. (*Coleman*, 212 Ill. App. 3d at 1006.) The judge will then weigh the evidence and draw a reasonable conclusion therefrom. (*Doss*, 214 Ill. App. 3d at 1055.) There must be an affirmative showing on the record that the court actually used improper evidence to rebut the presumption that the trial court considered only competent evidence. (*People v. Gunartt* (1991), 218 Ill. App. 3d 752, 760, 578 N.E.2d 1081.) Here, the court considered only competent evidence in reaching its conclusion and defendant has failed to rebut this presumption. Therefore, no error was present.

■ It is well accepted that in order to establish a claim of self-defense, a defendant must prove that

"unlawful force was used against him, he was not the aggressor, he believed that the danger of harm was imminent, force was necessary to avert the danger, and the amount of force used was necessary." *People v. Sanchez* (1990), 206 Ill. App. 3d 90, 108, 563 N.E.2d 1127.

Where the defendant uses deadly force he must believe that the threatened force will cause him death or great bodily harm, or that the force threatened is a forcible felony. (*People v. Daniel* (1989), 191 Ill. App. 3d 837, 842, 548 N.E.2d 354.) When the evidence negates any element of self-defense beyond a reasonable doubt, the People have carried their burden. (*People v. Martinez* (1990), 206 Ill. App. 3d 813, 827, 564 N.E.2d 1271.) Defendant fired an excessive number of shots even if he feared his life. Moreover, decedent did not have a gun. Based on the evidence presented, defendant cannot claim that he acted in self-defense as it is clear that he was the aggressor.

## IV

Defendant finally contends that he was not proven guilty of first degree murder beyond a reasonable doubt. We disagree.

When an issue involving reasonable doubt is presented, a reviewing court's function is not to retry the defendant. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) Instead, the relevant inquiry is

"whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 453.

Once a defendant has raised an affirmative defense such as self-defense, the burden then shifts to the People to prove the elements of the offense charged and to prove, beyond a reasonable doubt, that the defendant did not act in self-defense. *People v. Carter* (1985), 135 Ill. App. 3d 403, 409, 481 N.E.2d 1012.

When the trial court has ascertained that the People have negated beyond a reasonable doubt any one of the elements justifying the use of force, then the People have carried their burden of proof. *People v. Greene* (1987), 160 Ill. App. 3d 1089, 1096, 513 N.E.2d 1092.

The thrust of defendant's argument is that he was justified in using self-defense and he should have been acquitted. The issue of when self-defense is justified requiring acquittal, and when it is unjustified requiring a finding of voluntary manslaughter, was addressed in *People v. O'Neal* (1984), 104 Ill. 2d 399, 472 N.E.2d 441. In *O'Neal*, the court stated that

"[i]f the defendant's belief as to the use of force was unreasonable, the crime should be reduced from murder to manslaughter. If the defendant's belief was reasonable, however, he should be exonerated." *O'Neal*, 104 Ill. 2d at 405.

A reasonable belief of force is when a defendant

"proves he was not the aggressor, but was confronted with unlawful force, that he reasonably believed the danger of harm was imminent and that the force he used was necessary to defend against that danger." *People v. Colson* (1989), 187 Ill. App. 3d 423, 435, 543 N.E.2d 282.

When a defendant uses deadly force, it is justified only when the person reasonably believes that such force is necessary to prevent imminent death or severe bodily harm. Furthermore, the person threatened must not be the aggressor. *People v. Berry* (1988), 175 Ill. App. 3d 420, 426, 529 N.E.2d 1001.

The facts in the instant case clearly demonstrate that defendant was the aggressor, thereby precluding him from alleging that he was justified in his actions. On three separate occasions, defendant confronted decedent's group of friends and instigated a fight. The

first instance occurred when defendant fought with Marvin Harris' friends outside of a pool hall. Harris and his group retreated into a restaurant while defendant and his brother went home only to return a few minutes later. Defendant then had an altercation with Carey Taylor and shot at him.

The groups separated again and defendant returned a third time. Decedent was present at this time and issued a challenge to fight any member of defendant's group. Defendant accepted the challenge, entered the street, and fired four shots at or near decedent with the last shot penetrating decedent's chest and exiting his back.

■ In light of the record, we hold that the trial court was correct in determining that defendant's actions (repeatedly confronting the decedent's group and arming himself with a weapon) made him the aggressor and, as such, he was not justified in his actions. Thus, the trial court made a finding of fact as to defendant's unjustified use of force, and when viewed in the light most favorable to the prosecution, the evidence reinforces the court's decision and should not be overturned. Defendant's conviction and sentence for murder must stand.

Pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, and relevant statutory provisions, we grant the People of the State of Illinois costs and incorporate as part of their judgment a fee of $50 for defending this appeal. In addition, pursuant to *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319, we grant the People an additional fee of $25 for oral argument.

Judgment affirmed.

GORDON, P.J., and McNULTY, J., concur.