2023 IL App (1st) 220114-U

No. 1-22-0114

Order filed July 28, 2023

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 4584 |
| | ) | |
| HENRY WILLIS, | ) | Honorable |
| | ) | Lawrence E. Flood, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MITCHELL delivered the judgment of the court.
Justices Lyle and Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial evidence was sufficient to prove defendant guilty beyond a reasonable doubt of aggravated domestic battery. The trial court acted within its discretion when admitting evidence of two prior acts of domestic violence to show defendant's propensity to commit domestic violence.

¶ 2    Following a bench trial, defendant Henry Willis was found guilty of aggravated domestic battery, robbery, and aggravated battery. The trial court merged defendant's counts and sentenced him to three years in prison on one count of aggravated domestic battery. On appeal, defendant

argues that the trial evidence was insufficient to prove him guilty where the testifying complainant lacked credibility because she told "multiple lies to the police" and changed her "story" continuously. Defendant further argues he is entitled to a new trial because the trial court improperly considered two prior acts of domestic violence as evidence of defendant's propensity to commit domestic violence, when the State only submitted the prior acts to show *modus operandi* and motive. For the reasons explained below, we affirm.

¶ 3 Defendant was charged by information with two counts of aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2018)), one count of robbery (720 ILCS 5/18-1(a) (West 2018)), and one count of aggravated battery (720 ILCS 5/12-3.05(c) (West 2018)), following an incident in Chicago on February 20, 2018, in which defendant struck Ronisha Gamble in the face and took money and a cellphone from her.

¶ 4 Prior to trial, the State filed a motion to allow other crimes evidence "to show intent, motive, absence of mistake and *modus operandi*." The motion sought to admit two prior incidents involving defendant and Gamble. The first incident took place on December 5, 2016, at about 6 a.m. Defendant had a "verbal altercation" with Gamble, pulled out a hammer, and hit Gamble in the right eye, right knee, and right hand. Gamble went to the hospital to be treated for lacerations. The second incident took place on June 20, 2017, at about 10:30 p.m. Defendant had a verbal altercation with Gamble, "jumped on" her, and then "took her car." The State argued that the probative value of the evidence of defendant's prior acts outweighed the prejudicial effect. The State reasoned that the prior incidents were proximate in time to the instant offense because they occurred about once every 6 months, all within 18 months. The State also asserted that defendant's prior acts were factually similar to the instant offense, because they both involved situations where

defendant physically attacked Gamble when they were alone when it was dark outside. In both incidents, defendant took items from Gamble, and Gamble was hospitalized as a result.

¶ 5    At a hearing on the motion, the State asked that the other-crimes evidence be allowed "to reveal an ongoing pattern of *modus operandi* as well as the Defendant's motive, which is to *** keep the victim in a relationship with him and to utilize her for her possessions." As "kind of an aside," the trial court stated that "with sex cases *** the prior acts *** are admissible *** as far as showing prior acts and inclination," and asked if there was "something similar" in domestic battery cases. The State responded it was uncertain, and it was "not comfortable with admitting it for propensity." The State clarified it was just seeking to use the prior incidents for "*modus operandi* and motive." Defendant objected to admission of the prior incidents, arguing *inter alia* there was no evidence that defendant had a motive to keep Gamble in the relationship, the incidents were too vague, and "it looks like propensity." The court responded, "that's true with any other act that you bring in, but it's limited to what the State is asking that I admit it for. It's all propensity, obviously." The trial court granted the State's motion to admit the evidence of prior incidents. The court stated that since it would be hearing the evidence at the bench trial, it would admit both prior incidents for purposes of "*modus operandi* and motive." The court stated it believed the evidence's probative value "would be" outweighed by the "prejudicial effect, which is propensity." Nonetheless, the court stated it would weigh the testimony and, "depending upon the testimony," it may not consider the prior incidents if it does not find them probative.

¶ 6    At trial, Gamble testified that she had known defendant for five or six years and dated him on and off from the beginning of 2015 to 2017 or 2018. In February 2018, Gamble was dating both defendant and her now fiancé. On the night of February 20, 2018, Gamble was outside a "social

club" at the intersection of 47th Street and Vincennes Avenue and saw defendant exit the club. She left briefly to take her fiancé to work, returned, and parked on a public street outside the club. Gamble drank one "cup" of alcohol in her vehicle and spoke with defendant on the phone. Defendant left the club with a bottle of alcohol and entered her vehicle. At that time, defendant showed no animosity and did not seem agitated. Gamble sat in the front driver's seat, defendant sat in the front passenger's seat, and no one else was in or around the vehicle.

¶ 7     Gamble and defendant spoke for about five or six minutes. Defendant then made a lewd comment about her fiancé and struck Gamble in the eye with his fist. Gamble thought she "blacked out." When she woke up, the vehicle's driver's side door was open, but the window was closed. Defendant was outside the driver's side of the vehicle "going in" the front zipped pocket of Gamble's jacket, which was presented in court. Gamble saw defendant grab her cellphone, which had been loose inside the vehicle. At that time, Gamble had "$60-some" in her jacket pocket. Gamble never saw her cellphone or the "$60-some" again.

¶ 8     After defendant left, Gamble "sat there" but could not remember for how long. She eventually drove home, where she lived with her mother. Gamble did not go to the hospital that night. She called the police the next day and told them what happened while her mother was present. Gamble initially lied to the police, telling them she was at a liquor store, because she was afraid her mother would "kick [her] out" of the house if she learned Gamble was with defendant, whom her mother knew "hung out" at the social club. Gamble "played phone tag" with a detective and finally spoke with Detective Theiss at the police station on March 7, 2018.[1] Gamble told Theiss that the incident occurred at the social club on 47th and Vincennes.

---

[1] The first name of Detective Theiss does not appear in the transcript of the trial proceedings.

¶ 9     Gamble testified that she used to bet with defendant on who would win the Super Bowl and basketball games, but "[i]t was just a joke," and they did not discuss how much money they would bet. Gamble did not bet $60 on the 2018 Super Bowl and did not remember what team she bet on winning. On the night of the incident, defendant did not ask her for money based on a Super Bowl bet.

¶ 10    Gamble received medical treatment for her eye at a hospital and was diagnosed with a broken orbital socket. Gamble still saw "black dots" in the vision of her right eye, which she had not seen prior to the incident.

¶ 11    Prior to the February 2018 incident, on December 5, 2016, at about 6:15 a.m., Gamble and defendant were in defendant's vehicle. Defendant, who was not working and asked for money "[a]ll the time," asked Gamble for money. Gamble declined. Defendant then grabbed a hammer and hit Gamble in the knee, arm, and forehead just above her right eye. Gamble went to the hospital afterward.

¶ 12    On June 20, 2017, Gamble and defendant shared a vehicle, for which Gamble had paid but defendant drove. She wanted to use the vehicle that day. Gamble asked defendant for the keys, and he said "no" and hit her shoulder, "like the chest part." Gamble reported the incident to the police, but defendant left in the vehicle before the police arrived and was not arrested. Gamble chose not to prosecute the case.

¶ 13    On cross-examination, Gamble testified that after defendant hit her with the hammer in the December 2016 incident, she filed a police report but did not press charges, sign a complaint, or seek an order of protection.

¶ 14    As to the June 2017 incident, Gamble testified that she told the police defendant punched her shoulder. When asked whether she told the police defendant "jumped on" her, Gamble replied, "Jumped on, I'm sorry it's the wrong term." After that incident, Gamble neither sought an order of protection nor pursued criminal charges.

¶ 15    On the night of the instant offense, Gamble left home to meet with defendant at the social club but did not tell her mother. She was not afraid of defendant that night, even though defendant had previously hit her face with a hammer. Gamble could not recall whether the vehicle's window was open when she regained her consciousness. She initially testified that she had a drink before she left home, but then stated she had the drink in the vehicle.

¶ 16    The day after the incident, two police officers came to Gamble's house after her mother called. She lied to the officers and told them she "ran into" defendant outside a liquor store. Gamble never told those officers that defendant struck her in the face and took her cellphone and wallet. She denied telling the officers that defendant "pushed [her] down," because she was sitting in her vehicle during the incident.

¶ 17    After the police came to her house, Gamble sought an order of protection against defendant that same day and received assistance in filling out the petition. She stated in the petition that she was walking into a store and saw defendant. Gamble could not recall stating that she fell to the floor after defendant struck her. The petition included the prior incident involving the hammer, but she could not recall stating the incident had occurred in the spring of 2017. Gamble could not recall the date of that incident but believed that it happened in the winter.

¶ 18    Gamble denied telling Detective Oscar Torres that her nose was bleeding as result of the incident. She lied to the police a second time when she told Torres on the phone that defendant hit

her at the store. When she talked to Torres at the police station about two weeks later, after defendant had been arrested, she told Torres she had previously lied about where the incident occurred. On March 7, 2018, Gamble told Torres that defendant stole "$60-something," but she could not remember the amount. Gamble denied telling hospital personnel that she had been punched in the face at a supermarket. She could not recall whether she told anyone prior to trial that defendant brought a bottle of alcohol to the vehicle.

¶ 19 On redirect examination, Gamble clarified that the incident occurred on February 20, 2018; that she called the police on February 21, 2018; and that she went to the hospital for treatment on February 23, 2018. When she said defendant "jumped on" her in describing the June 2017 incident, she meant that defendant "hit" her.

¶ 20 Torres testified that on March 18, 2018, he and his partner Mirandized and interviewed defendant at the police station following his arrest. Defendant stated he had been dating Gamble for "years." On February 20, 2018, he was playing poker and drinking liquor at the social club and received a text message from Gamble. Defendant and Gamble spoke over text and met outside the social club. Defendant told Torres that they got into an altercation because Gamble owed defendant money from a Super Bowl bet. Gamble paid defendant the money. The two argued more, and Gamble started grabbing defendant's hair. Defendant attempted to push her off his hair and grabbed her by the head and shoulders. He stated that "if he hit her, he didn't mean to."

¶ 21 On cross-examination, Torres testified that after he interviewed defendant, he also had a conversation with Gamble about the incident. Gamble told Torres that she initially lied to the officers about the incident. Gamble told Torres that she sat in the vehicle with defendant for about 20 minutes. Defendant then exited the vehicle, walked to the driver's window, and "all of a sudden

punched her in the face," causing her nose to bleed. Gamble never told Torres that defendant exited the club with a bottle of alcohol in his hand or that he had pushed her to the ground.

¶ 22     The State entered a stipulation that the hospital records for Gamble's medical treatment were true and accurate. The court admitted them into evidence, without objection. The State also entered a stipulation that there was no blood on the jacket Gamble had been wearing during the incident.

¶ 23     On August 25, 2021, the trial court found defendant guilty on all counts: two counts of aggravated domestic battery and one count each of aggravated battery and robbery. The court stated the case "boils down to one of credibility between the two witnesses" and whether Gamble "was credible in her testimony regarding what occurred." The court recited Gamble's account of the incident and noted that Gamble did not report it to the police "right away" and said it happened at a different location. The court acknowledged that Gamble initially did not relate "what exactly happened." Nonetheless, the court observed that Gamble's mother, with whom she lived, did not want Gamble with defendant.

¶ 24     The court also noted that defendant had acknowledged meeting with Gamble near the club and stated that if he struck her, he "didn't mean it." The court found "that corroborates the victim's testimony regarding what had occurred," and Gamble's orbital fracture was documented and corroborated by hospital records. The court stated it heard evidence regarding the 2016 and 2017 altercations between defendant and Gamble, which the State "sought to admit *** for pattern and also for motive." The court stated that, considering all the evidence, it found the State proved defendant guilty beyond a reasonable doubt on all four counts.

¶ 25    Defendant filed a posttrial motion for reconsideration and alternatively a new trial. He argued that the State failed to prove him guilty beyond a reasonable doubt because there was no evidence establishing his mental state as to the battery-related charges and that Gamble lacked credibility in testifying as to all charges. During arguments on defendant's motion, the court acknowledged that Gamble's inconsistent accounts of the incident "creates a problem as far as credibility is concerned," but noted that Gamble referenced that her mother did not want her around defendant and that her mother had thought that Gamble was not involved with him. The court then stated, "Additionally, I'm able to look at that prior domestic battery that I allowed in for propensity under the *** Domestic Violence Statute." Defendant's counsel stated, "[I]f you're talking about propensity, you might want to consider whether or not this victim was in fear of this defendant," and the facts showed that she did not fear defendant.

¶ 26    The court denied defendant's posttrial motion. It found Gamble credible despite "those issues," when "coupled with the injury" and "with the propensity eviden[ce], which I'm allowed to consider under the Statute regarding the prior incidents of violence between the defendant and the victim." Defense counsel later pointed out for the record that the State did not seek to introduce the prior acts for propensity but rather for *modus operandi*. The court replied that it "under[stood] that" but it could consider the evidence for propensity under section 115-7.4 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.4(c) (West 2018)) and it "took advantage of that as far as in the statute."

¶ 27    At sentencing, the trial court merged three counts into the aggravated domestic battery count premised on causing great bodily harm to Gamble and sentenced defendant to the minimum three years in prison.

¶ 28    On appeal, defendant argues the State failed to prove him guilty beyond a reasonable doubt of aggravated domestic battery where his conviction rested entirely on Gamble's testimony, which was not credible and contained multiple inconsistent statements.

¶ 29    When reviewing the sufficiency of the evidence at trial, our inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We will not retry the defendant when reviewing a challenge to the sufficiency of the evidence. *People v. Nere*, 2018 IL 122566, ¶ 69. "[I]t is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts," and we will not substitute our judgment for that of the trier of fact on questions involving the weight of evidence or the credibility of witnesses. *People v. Gray*, 2017 IL 120958, ¶ 35. The trier of fact need not "disregard inferences that flow normally from the evidence before it," or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 70. "The testimony of a single witness is sufficient to convict if the testimony is positive and credible, even where it is contradicted by the defendant." *Gray*, 2017 IL 120958, ¶ 36. We "must allow all reasonable inferences from the record in favor of the prosecution" (*People v. Givens*, 237 Ill. 2d 311, 334 (2010)), and will not reverse a conviction unless the evidence is "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt" (*People v. Bradford*, 2016 IL 118674, ¶ 12).

¶ 30    Defendant was convicted of aggravated domestic battery. To prove defendant guilty of aggravated domestic battery, as charged, the State had to show that defendant, in committing a

domestic battery, intentionally or knowingly caused "great bodily harm" to Gamble, with whom he had been in a dating relationship. 720 ILCS 5/12-3.3(a) (West 2018). A person commits domestic battery by, as relevant here, knowingly and without legal justification causing "bodily harm to any family or household member." 720 ILCS 5/12-3.2(a) (West 2018).

¶ 31    We find the trial evidence was sufficient to prove defendant guilty beyond a reasonable doubt of aggravated domestic battery.[2] Gamble testified that on the evening of February 20, 2018, she was in a vehicle with defendant, whom she was dating at the time, outside a social club when defendant punched her in the face and stole her cellphone and $60. Gamble testified she became unconscious from the blow and suffered an injury to her eye requiring medical treatment. At the time of trial, the vision in her right eye was still affected by the injury. Gamble's testimony alone is sufficient to support a determination that defendant knowingly or intentionally punched Gamble in the face, causing her great bodily harm. *Gray*, 2017 IL 120958, ¶ 36 (the positive testimony of a single, credible witness is sufficient to convict).

¶ 32    Further, hospital records show Gamble received medical treatment for a broken eye socket following the incident, corroborating her testimony regarding the injury. See *People v. Golden*, 2021 IL App (2d) 200207, ¶¶ 110-11 (the State proved the defendant guilty of aggravated domestic battery, where the physical evidence depicting the victim's injuries corroborated her account). Defendant's statement to Detective Torres further corroborated much of Gamble's testimony. Defendant described meeting Gamble inside her vehicle outside the social club on the evening of February 20, 2018, having an altercation with Gamble wherein he grabbed her by the head and

---

[2] Defendant does not dispute that Gamble constituted a "family or household member," which section 12-0.1 of the Criminal Code of 2012 (720 ILCS 5/12-0.1 (West 2018)) defines as including "persons who have or have had a dating or engagement relationship."

shoulders, and leaving with her $60, although he claimed she gave him the funds and that, if he hit her, he "didn't mean it." See *Gray*, 2017 IL 120958, ¶ 39 (evidence sufficient to prove the defendant guilty of aggravated domestic battery where the victim's testimony was corroborated by the defendant's own version of the events). Defendant's prior acts of domestic violence against Gamble show that defendant had a pattern of acting abusively toward Gamble, and that he had previously hit Gamble in the course of taking something from her. Taking the totality of the evidence in the light most favorable to the State as we must, we find a rational trier of fact could have found defendant guilty beyond a reasonable doubt of aggravated domestic battery.

¶ 33    Nevertheless, defendant argues that Gamble's testimony was insufficient to prove him guilty where she had "lied" to the police multiple times and recounted an "ever-changing story." As defendant points out, Gamble initially lied to both the officers who came to her home and to Detective Torres about where the incident occurred. However, she subsequently told Torres that she had lied, and explained at trial that she had lied because she was afraid her mother would "kick" her out of the house if she found out she was at the social club where defendant "hung out." The court acknowledged that the inconsistencies in Gamble's testimony and that her credibility was a "problem." But the trial court also found that her account was ultimately corroborated by hospital records and defendant's statement to the detective. The credibility of witnesses is for the trier of fact, here the trial court, to determine, and we defer to its ultimate determination that Gamble's assertion that defendant punched her in the face was credible. *Gray*, 2017 IL 120958, ¶ 35.

¶ 34    Throughout her statements to police and her trial testimony, Gamble consistently claimed that defendant struck her. The minor discrepancies in her trial testimony, *i.e.*, whether defendant

left the social club with a bottle of alcohol or whether Gamble's nose was bleeding after defendant struck her, are not significant enough to create reasonable doubt. See *People v. DeLuna*, 334 Ill. App. 3d 1, 23-24 (2002) (it is well established that minor discrepancies in testimony do not create reasonable doubt); *People v. Nelson*, 246 Ill. App. 3d 824, 830 (1993) ("The trial court is free to accept or reject as much or as little as it pleases of a witness' testimony.").

¶ 35 Reversal of a conviction is not warranted "simply because the evidence is contradictory or because the defendant claims that a witness was not credible." *Gray*, 2017 IL 120958, ¶ 36. Defendant essentially asks this court to reweigh the evidence in light of his challenges to Gamble's credibility. This we cannot do. We will not substitute its judgment for that of the trier of fact as to the weight of the evidence or the credibility of the witnesses. *Id.* ¶ 35. Construing the evidence in the light most favorable to the State, as we must, we do not find the evidence so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of defendant's guilt of aggravated domestic battery.

¶ 36 Defendant next argues that his due process rights were violated when the trial court improperly considered his prior actions against Gamble as evidence of his propensity to commit domestic violence, where the prior acts were only offered by the State, and admitted by the court, to show *modus operandi* and motive. We review a trial court's admission of other-crimes evidence for an abuse of discretion. *People v. Peterson*, 2017 IL 120331, ¶ 125.

¶ 37 Generally, evidence of other crimes, wrongs, or acts "is not admissible to prove the character of a person in order to show action in conformity therewith," *i.e.*, propensity. Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). Section 115-7.4(a) of the Code of Criminal Procedure, however, provides an exception to this rule of exclusion in domestic violence cases, allowing the admission

of evidence of a defendant's other domestic violence offense(s) in order to show propensity. 725 ILCS 5/115-7.4(a) (West 2018); *People v. Dabbs*, 239 Ill. 2d 277, 284-85 (2010). Where the State "intends to offer evidence under this Section, it must disclose the evidence, including statements of witnesses or a summary of the substance of any testimony, at a reasonable time in advance of trial, or during trial if the court excuses pretrial notice on good cause shown." 725 ILCS 5/115-7.4(c) (West 2018). It must disclose not only the evidence of prior acts that it seeks to admit but the specific purpose for which it intends to use that evidence. *People v. Valdez*, 2022 IL App (1st) 181463, ¶ 80. Prior to admitting other-crimes evidence under section 115-7.4, the trial court must weigh the probative value of the evidence against any undue prejudice to the defendant. 725 ILCS 5/115-7.4(b) (West 2018); *Dabbs*, 239 Ill. 2d at 290-91. "A court may exercise its discretion and exclude evidence, even if it is relevant, if the danger of unfair prejudice substantially outweighs any probative value." *People v. Hanson*, 238 Ill. 2d 74, 102 (2010).

¶ 38    Defendant does not challenge the trial court's admission of the defendant's prior acts for the purpose of showing *modus operandi* and motive, as requested by the State. See *People v. Illgen*, 145 Ill. 2d 353, 364-65 (1991) (a trial court may admit other-acts evidence if it is relevant to another permissible purpose—such as proving *modus operandi* and motive—and if the risk of prejudice does not substantially outweigh its probative value). Rather, he contends the court's posttrial remark that the other crimes evidence was "allowed in for propensity," which the court stated it was "allowed to consider under the Statute," show that, in finding him guilty of aggravated

domestic battery, the court improperly considered the prior acts for a purpose different than that for which they were admitted into evidence, denying him due process.[3]

¶ 39    We presume that the trial court considered only competent evidence unless "the record affirmatively establishes that the trial judge in fact considered inadmissible evidence." *People v. Williams*, 246 Ill. App. 3d 1025, 1033 (1993) (citing *People v. Gilbert*, 68 Ill. 2d 252, 259 (1977)). Here, defense counsel impeached Gamble's credibility after cross-examining her inconsistent accounts of what transpired. The trial court was tasked with weighing Gamble's testimony against defendant's statement that "if he hit her, he didn't mean to," prompting the trial court to revisit the use of the other-acts evidence. There is no prejudice where a trial court reconsiders an *in limine* ruling in light of how the evidence unfolds at trial. See *People v. Zimmerman*, 2018 IL App (4th) 170695, ¶¶ 145-47 (a trial court always has authority to revisit rulings *in limine*). And here, section 115-7.4 *expressly* provides an exception to the otherwise forbidden purpose of introducing other acts to show a defendant's criminal propensity. See Ill R. Evid. 404(b) (other-acts evidence "is not admissible to prove the character of a person in order to show action in conformity therewith *except* provided by sections 115-73, 115-7.4, and 115-20 of the Code of Criminal Procedure." (Emphasis added.)).

¶ 40    Defendant argues that he was prejudiced because propensity evidence is significantly different from evidence of *modus operandi* or motive. The purpose of the State's duty to disclose before trial its intent to admit other-acts evidence is to ensure that the trial court can weigh the risk of undue prejudice before the evidence reaches the jury. See 725 ILCS 5/115-7.4(c); *Valdez*, 2022

---

[3] Our supreme court has rejected the argument that a trial court's consideration of prior incidents of domestic violence for propensity purposes violates a defendant's due process rights. *People v. Dabbs*, 239 Ill. 2d 277, 292-94 (2010) (citing 725 ILCS 5/115-7.4).

IL App (1st) 181463, ¶ 82. But defendant was tried by the bench, and he provides no explanation as to how he would have prepared for trial any differently had he anticipated that the trial court would also consider the same prior acts for propensity. Given that defendant had notice of the prior acts would be admitted into evidence and was able to cross-examine Gamble regarding the acts, we cannot find that defendant was denied a fair trial or suffered any prejudice because the trial court considered them for one additional purpose.

¶ 41    Even if the trial court erred by considering the other-acts evidence for propensity, such an error would be harmless. See *Valdez*, 2022 IL App (1st) 181463, ¶¶ 85-89 (applying a harmless error analysis to the erroneous admission of bad-acts evidence). Gamble's testimony that defendant punched her in the face causing her eye injury, standing alone, was sufficient to support the conviction. Further, Gamble's injuries were corroborated by her hospital records and by defendant's statement to Torres in which he admitted to grabbing Gamble's head and shoulders during a physical altercation at the time and place that Gamble identified. Even without the evidence that defendant twice before committed acts of domestic violence against Gamble, the evidence is not so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of defendant's guilt of aggravated domestic battery. On the contrary, the evidence proving defendant's guilt of aggravated domestic battery was overwhelming.

¶ 42    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 43    Affirmed.