No. 2--04--0501                                                    filed:
6/22/06

_____
_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 02--CF--796 |
| RYAN C. KIRKPATRICK, | ) ) | Honorable Rosemary Collins, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____
_____

JUSTICE SLATER delivered the opinion of the court:

The defendant, Ryan C. Kirkpatrick, was convicted of two counts of threatening a public official. 720 ILCS 5/12--9(a)(1)(i), (a)(2) (West 2000). The trial court sentenced him to two consecutive terms of nine years' imprisonment. Kirkpatrick appeals his conviction and sentence, arguing that: (1) the State failed to prove him guilty beyond a reasonable doubt of one of the counts of threatening a public official; and (2) the trial court erred by sentencing him to consecutive sentences. We affirm.

FACTS

The following evidence was adduced at the jury trial, which concluded on December 3, 2003. Victoria Rossetti and Barbara Gilleran Johnson served as trial court judges in

No. 2--04--0501

Lake County. Before the trial, Judge Gilleran Johnson was elected to the Illinois Appellate Court, Second District. In 1999 and 2000, Kirkpatrick had been sentenced by both judges in several cases to terms of imprisonment in the Department of Corrections (DOC).

On August 16, 2001, Judge Rossetti received a handwritten letter from Kirkpatrick in which he stated his intent to kill her. He claimed to have received her personal information, such as where she lived and what kind of car she drove, from acquaintances. He explained that he would allow her to live if she would kill Judge Gilleran Johnson. He allowed her one month to complete the murder and warned her not to alert the authorities. Kirkpatrick had sent the letter, which bore a DOC return address and included his prisoner number, from his prison cell on August 14. Judge Rossetti testified that the letter caused her to fear for her and her family's safety. She telephoned Judge Gilleran Johnson and informed her of the content of Kirkpatrick's letter. She then telephoned Detective Kevin Maki of the Lake County sheriff's department on August 17.

On August 22, Maki interviewed Kirkpatrick. Kirkpatrick admitted to writing the letter, and he repeated his threat that he would kill Judge Rossetti if she failed to kill Judge Gilleran Johnson for him. He further stated that his threats were serious, and that if he ever saw Judge Gilleran Johnson "in a store, he would take a gun out and shoot her."

On August 25, Kirkpatrick mailed another letter to Judge Rossetti, which stated (reproduced as written):

"To: Judge Rossetti

You thought you were pretty slick sending come cops down here.  Well hey check it.  You rember how I told you in your last letter that I know about your car and your house and all that stuff.  Well if you think I'm bullshiting you the next time I write you.  I will send you some copies of pictures I have.  I give you athoner offer of $50,000 dollars to take care of Judge Barbara Gilleran-Johnson.  I also found out that it's not the State's Attorney in charge of bring charges against me.  I found that the info was turned over to the Attorney General's office to proscute.  The Attorney name Mark Snuck.  Guess want they aren't going to do anything to me.

Later

P.S.  Watch for the shadow that follows you in the parking lot."

Judge Gilleran Johnson took both letters seriously.  They left her feeling nervous and scared, and she feared for her safety and her family's safety.  She did not believe that Judge Rossetti would attempt to kill her, but she was concerned that Kirkpatrick might pursue his agenda in other ways.  That Kirkpatrick was in prison with other convicted criminals when he wrote the letters only added to her fear.

The jury found Kirkpatrick guilty of two of four charged counts of threatening a public official.  The guilty verdict was based on the August 25 letter.  The jury found that, in the letter, Kirkpatrick had threatened both Judge Rossetti and Judge Gilleran Johnson.

Kirkpatrick appeals his conviction and sentence.

## ANALYSIS

### I. Reasonable Doubt

No. 2--04--0501

On appeal, Kirkpatrick first contends that the State's evidence was insufficient to prove him guilty beyond a reasonable doubt of one of the two counts of threatening a public official. He argues that his conviction must be reversed because Judge Gilleran Johnson could not have been placed in reasonable apprehension of future bodily harm where she did not believe that Judge Rossetti would carry out Kirkpatrick's solicitation to kill her.

In determining a defendant's guilt, the trier of fact is entitled to draw reasonable inferences that flow from the evidence. People v. Campbell, 146 Ill. 2d 363, 389 (1992). On review, a criminal conviction will not be overturned unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. People v. Schott, 145 Ill. 2d 188, 203 (1991). The relevant inquiry is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. People v. Boclair, 129 Ill. 2d 458, 471 (1989).

A person commits the offense of threatening a public official when, inter alia, (1) he knowingly and willfully communicates, directly or indirectly, a threat to a public official; (2) the threat would place the public official in reasonable apprehension of immediate or future bodily harm; and (3) the threat was related to the official's public status. 720 ILCS 5/12--9(a)(1)(i), (a)(2) (West 2000). The trier of fact may look to the context in which a threat arose when determining whether the threat was credible. People v. Peterson, 306 Ill. App. 3d 1091, 1100 (1999).

No. 2--04--0501

In the instant case, the State's evidence established beyond a reasonable doubt the elements of threatening a public official as to the threat made to Judge Gilleran Johnson. In his initial letter, Kirkpatrick stated his intent to kill Judge Rossetti unless she killed Judge Gilleran Johnson. He made the threat more credible by indicating that he had obtained Judge Rossetti's personal information. He also told Maki that he was serious about wanting to kill Judge Gilleran Johnson. Then, knowing that police were investigating him, Kirkpatrick sent the second letter. Judge Gilleran Johnson testified that both letters frightened her and that the second letter seemed more threatening. We recognize that Judge Gilleran Johnson did not fear an attack by Judge Rossetti. However, the content of the letters and other statements made by Kirkpatrick indicated a hostile intent towards Judge Gilleran Johnson. Thus, the totality of the evidence showed that Kirkpatrick's threats in the second letter would cause Judge Gilleran Johnson reasonable apprehension of future bodily harm.

We further find Kirkpatrick's citation to Peterson in support of his argument to be unavailing. In Peterson, the defendants were found guilty, but mentally ill, of five counts of intimidation, based on letters they had mailed to judges and an administrator threatening that God would kill them unless they cooperated with the defendants. Peterson, 306 Ill. App. 3d at 1100. On appeal, the defendants argued that their threats were not credible because it was impossible to have God kill the victims. Peterson, 306 Ill. App. 3d at 1100. The reviewing court rejected the defendants' argument, holding that, although the harm that the defendants threatened would come from an unlikely third party, the tenor of the letters

˘5˘

was unmistakably hostile and would have a reasonable tendency to create apprehension of bodily harm. Peterson, 306 Ill. App. 3d at 1104. Thus, we find that the holding in Peterson not only fails to support Kirkpatrick's argument, but rather tends to support the State's position in the instant case.

Therefore, reviewing the evidence in the light most favorable to the prosecution, we find that the State proved Kirkpatrick guilty beyond a reasonable doubt of two counts of threatening a public official.

## II. Consecutive Sentences

Kirkpatrick next asserts that the trial court improperly imposed consecutive sentences upon him where he committed the offenses as part of single course of action. Specifically, he argues that his objective in sending the letter was to gain attention, and thus the threats against the two judges contained in the letter were parts of a single course of action designed to achieve that objective.

The determination of whether a defendant's actions constituted a single course of conduct presents a question of fact. People v. Daniel, 311 Ill. App. 3d 276, 287 (2000). Accordingly, we will not disturb the trial court's determination unless it is against the manifest weight of the evidence. Daniel, 311 Ill. App. 3d at 287. A judgment is against the manifest weight of the evidence when the opposite conclusion is apparent or when the trial court's findings appear to be unreasonable, arbitrary, or not based on the evidence. In re Custody of K.P.L., 304 Ill. App. 3d 481, 488 (1999).

Section 5--8--4(b) of the Unified Code of Corrections authorizes the trial court to impose consecutive sentences when (1) the defendant's actions did not constitute a single course of action and (2)

> "having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant." 730 ILCS 5/5--8--4(b) (West 2002).

See People v. Cooper, 239 Ill. App. 3d 336, 356-57 (1992). Courts determine if multiple acts were committed in a single course of conduct by assessing whether the acts were independently motivated or were part of an overarching criminal objective. People v. Kagan, 283 Ill. App. 3d 212, 220 (1996).

Our review of the record reveals that Kirkpatrick's threats against the two judges constituted two separate courses of action. In the letter that served as the basis for Kirkpatrick's conviction, Kirkpatrick had two objectives. First, he sought to intimidate Judge Rossetti. His goal in doing so was to both frighten Judge Rossetti and coerce her into complying with his demand to kill Judge Gilleran Johnson. Second, Kirkpatrick sought to cause Judge Gilleran Johnson to fear for her life by threatening to have her killed. Thus, Kirkpatrick committed two acts of threatening a public official with separate goals of intimidating each judge. His argument that his overarching goal was to gain attention is unavailing because seeking attention was not the criminal objective in this case.

Therefore, we find that the trial court's ruling that each threat against the two judges in the same letter constituted a separate course of conduct was not against the manifest weight of the evidence.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

O'BRIEN and BARRY, JJ., concur.