NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180263-U

NOS. 4-18-0263, 4-18-0264 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 9, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| OCHEIN WILSON, | ) | Nos. 15CF317 |
| Defendant-Appellant. | ) | 17CF523 |
| | ) | |
| | ) | Honorable |
| | ) | Nancy S. Fahey, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Defendant did not show he (1) was denied his right to a fair and impartial jury,
            (2) was denied his right to effective assistance of counsel, (3) was denied his right
            to due process, and (4) received an excessive sentence.

¶ 2     In June 2015, the State charged defendant, Ochein Wilson, in Vermilion County

case No. 15-CF-317 (hereinafter case No. 317) with one count of aggravated domestic battery

(720 ILCS 5/12-3.3(a-5) (West 2014)) and one count of aggravated battery with a deadly weapon

(720 ILCS 5/12-3.05(f)(1) (West 2014)).  At a December 2015 hearing, defendant pleaded guilty

to aggravated domestic battery and the charge of aggravated battery with a deadly weapon was

dismissed.  After a January 2016 hearing, the Vermilion County circuit court sentenced

defendant to four years' probation.

¶ 3     In July 2017, the State charged defendant in Vermilion County case No.

17-CF-523 (hereinafter case No. 523) with one count of threatening a public official (720 ILCS 5/12-9(a)(1)(i) (West 2016)), one count of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2016)), and one count of aggravated assault with a deadly weapon (720 ILCS 5/12-2(c)(1) (West 2016)). Also, in July 2017, the State filed a petition to revoke defendant's probation in case No. 317. At the December 2017 trial in case No. 523, the State only proceeded on the charge of threatening a public official, and the jury found defendant guilty of that charge. Defendant filed a motion for a new trial, which was denied. After a February 2018 hearing, the circuit court found defendant violated his probation in case No. 317. On February 27, 2018, the court held a joint sentencing hearing, at which it resentenced defendant to six years' imprisonment in case No. 317 and sentenced defendant to eight years' imprisonment in case No. 523 to run concurrent with his sentence in case No. 317. Defendant filed a motion to reconsider his sentence in both cases, and the court denied both motions in April 2018.

¶ 4        Defendant appeals, contending (1) the circuit court erred by not striking a prospective juror for cause in case No. 523, (2) he was denied effective assistance of counsel at his trial in case No. 523, (3) he was denied his right to due process at his trial in case No. 523, and (4) his sentences in both cases were excessive. We affirm.

¶ 5                                  I. BACKGROUND

¶ 6                                  A. Case No. 317

¶ 7        The State's two charges were based on defendant's actions on June 11, 2015. The aggravated domestic battery charge asserted defendant, in committing a domestic battery, strangled Yamen A.C. Wilson, a family or household member of defendant. Aggravated domestic battery is a Class 2 felony. 720 ILCS 5/12-3.3(b) (West 2014). The aggravated battery charge alleged defendant, in committing a battery, knowingly made contact of an insulting or

provoking nature by use of a deadly weapon with Crystal A. Wilson. At a December 2, 2015, hearing, defendant pleaded guilty to aggravated domestic battery pursuant to an open plea agreement, under which the State would request dismissal of the aggravated battery charge. After admonishing defendant and hearing the factual basis for the plea, the circuit court accepted defendant's guilty plea and dismissed the aggravated battery charge. At a January 29, 2016, hearing, the court sentenced defendant to 48 months' probation.

¶ 8        On July 25, 2017, the State filed a petition to revoke defendant's probation, asserting defendant, *inter alia*, (1) had tested positive for alcohol on several occasions, (2) failed to report for scheduled probation visits on four separate occasions, (3) committed the offense of domestic battery in September 2016 in Vermilion County case No. 16-CM-171, (4) committed the offense of threatening a public official in case No. 523, and (5) committed the offense of domestic battery in case No. 523. In October 2017, the State filed an amended petition to revoke defendant's probation, (1) removing the charges in case No. 523, (2) noting defendant was convicted of domestic battery in September 2016 in Vermilion County case No. 16-CM-171, and (3) asserting defendant was convicted of driving while license suspended in Champaign County case No. 16-CF-504.

¶ 9                        B. Case No. 523

¶ 10        The three charges in this case were based on defendant's actions on July 24, 2017. The charge of threatening a public official alleged defendant knowingly and willfully delivered or conveyed, directly or indirectly, to Officer Samuel Bernardi, a public official, a communication containing a threat that would place Officer Bernardi in reasonable apprehension of immediate or future bodily harm, in that defendant stated he would shoot Officer Bernardi in the face when he was off duty. Threatening a public official is a Class 3 felony. 720 ILCS

- 3 -

5/12-9(c) (West 2016). The domestic battery charge asserted defendant knowingly and without legal justification made physical contact of an insulting or provoking nature with Yamen, a family or household member of defendant. The charge noted it was a subsequent offense of domestic battery because defendant had previously been convicted of domestic battery in Vermilion County case No. 16-CM-171. Last, the aggravated assault with a deadly weapon charge contended defendant, without lawful authority, and using a deadly weapon, knowingly engaged in conduct which placed Yamen in reasonable apprehension of receiving bodily harm, in that defendant chased Yamen while holding two kitchen knives.

¶ 11        At the beginning of the December 7, 2017, jury trial, the State moved to dismiss the domestic battery and aggravated assault with a deadly weapon charges, and the circuit court dismissed them. After addressing defendant's motions *in limine*, the court conducted *voir dire*. One of the questions the court asked the prospective jurors was if they had any friends or relatives who were state's attorneys, defense attorneys, members of a police force, or who are involved in law enforcement. Prospective juror Dalane Fox indicated she had good friends who were law enforcement agents in Colorado. The court asked her several follow up questions about her ability to be fair and impartial. After all of the prospective jurors were questioned, defense counsel moved to strike Fox for cause because she would give police officers more credibility than other witnesses. The court denied the motion, and defense counsel used its first peremptory strike to remove Fox from the jury. Defense counsel used all of her seven peremptory strikes and wanted to strike prospective juror Sean Nicholson. Defense counsel asked for an additional peremptory strike since she had to use a strike on Fox, and the court denied the request. Neither party moved to strike Nicholson for cause. Nicholson was one of the 12 jurors.

¶ 12        The State presented the testimony of Officer Bernardi; Jason Dunavan, a police officer; and Kyle O'Brien, a police sergeant. Defendant testified on his own behalf and presented the testimony of Yamen, defendant's son. Neither party presented exhibits.

¶ 13        Officer Bernardi testified he was a probationary police officer, having been sworn in as a police officer on January 6, 2017. At around 4:42 a.m. on July 24, 2017, Officer Bernardi with his field training officer, Officer Dunavan, responded to a call at a home on Chandler Street. As Officer Bernardi arrived at the home, he observed defendant holding two butcher knives in front of the home. After defendant put the knives down, Officer Bernardi spoke with defendant. Officer Bernardi could smell alcohol coming from defendant, defendant's speech was a little slurry, and defendant could not stay on track. When questioned, defendant admitted he was intoxicated. Defendant's sons, Yamen and Ochein Wilson Jr., were also present at the scene. The sons reported Crystal, defendant's wife, had been inside the house but left out the back door. After talking to defendant and his two sons, Officer Bernardi made the decision to arrest defendant.

¶ 14        Officer Bernardi placed defendant in handcuffs and started walking defendant to the squad car. Defendant attempted to turn to face Officer Bernardi, which Officer Bernardi explained is dangerous because the person can spit in the officer's face or head butt the officer. Once they got to the squad car, Officer Bernardi asked defendant to take a seat in the car multiple times, and defendant responded, " 'F*** you' " and eventually stated, "F*** you. You're nothing but a rookie bitch." Defendant then complied and sat in the prisoner compartment of the squad car. While Officer Bernardi was driving to the public safety building, defendant told Officer Bernardi "he was going to shoot [his] rookie bitch ass in the face when [he] was off duty." Defendant also began to bang his head against the prisoner compartment.

Officer Bernardi notified dispatch defendant was being aggressive. Officer Bernardi took defendant's statement as an aggressive action and a threat. He explained, "if this guy gets the upper hand, he will be aggressive, possible, or try and attempt to hurt me."

¶ 15　　　　At the public safety building, Officer Bernardi was walking defendant to the door that leads to booking when defendant stated he was going to beat Officer Bernardi's ass when he removed defendant's handcuffs. Due to his threats, the handcuffs were left on defendant while he sat in the booking area. Defendant asked to have the handcuffs removed. Officer Bernardi described defendant's demeanor at that time as aggressive and violent. Officer Bernardi believed defendant would attack or strike him if he removed defendant's handcuffs.

¶ 16　　　　On cross-examination, Officer Bernardi testified the dash camera in the squad car he used to transport defendant to the public safety building records the inside of the squad car but was not working properly when he transported defendant. The camera took a video recording that day but no audio recording. Officer Bernardi also testified defendant was the person who made the 911 call. Moreover, Officer Bernardi stated he did not consider defendant's attempt to turn face-to-face with him while they were walking to the squad car a threat. Officer Bernardi again testified defendant made the statement he would shoot Officer Bernardi in the face when Officer Bernardi was off duty.

¶ 17　　　　Defense counsel then addressed what Officer Bernardi felt after defendant made his statement about shooting Officer Bernardi in the face.

"Q. Now, here there is a statement that you believed [defendant] said he was going to shoot your rookie bitch ass in the face when you are off duty?

A. That is, yes, what he stated.

Q. Where was he when he said that?

A. In the squad car, in the back of the squad 122.

Q. Did he have a gun on him at the time?

A. No.

Q. Had you ever seen him with a gun?

A. No.

Q. Have you ever dealt with him off duty before?

A. I have not, no.

Q. Were you scared by that statement?

A. It was a threat that to where if I run into somebody—normally on the street that doesn't make those threats, I wouldn't be as cognizant about it.

Q. But that doesn't answer the question.

MR. TAYLOR [ASSISTANT STATE'S ATTORNEY]:  Objection.

THE COURT:  I'm going to allow you to finish his answer to your question.

MS. MEENTS [DEFENSE COUNSEL]:  I would insist that it's nonresponsive.

THE COURT:  I am overruling that.  He can complete his answer.

THE WITNESS:  So basically what I was stating was somebody who in a normal arrest, if I were to see off duty, I would not be worried about.  With the threats that were made to me about [defendant] if I were to see him out in public, I would be a little bit more aware of what he is doing and where he's at or what would be in his hands at the time if I were to encounter him out in public off duty.

Q. So you were scared?

A. Yes."

Officer Bernardi also testified he did not seek counseling after defendant's statement, and defendant's statement had not affected Officer Bernardi's performance of his job duties.

¶ 18 Officer Dunavan testified the nature of the 911 call on July 24, 2017, was a domestic disturbance between a father and a son. When they responded to the call, defendant was standing in the middle of the street with a kitchen knife. Defendant dropped the knife when Officer Bernardi asked him to drop it. While Officer Dunavan briefly spoke with defendant's sons, his primary role was to oversee Officer Bernardi handle the call by himself. Officer Dunavan concurred with Officer Bernardi's decision to take defendant into custody for aggravated domestic battery. According to Officer Dunavan, defendant became visibly upset and argumentative when Officer Bernardi handcuffed him. When they were en route to the public safety building, defendant was banging his head on the plexiglass divider and threatened to shoot Officer Bernardi in the face if defendant saw Officer Bernardi off duty. Due to defendant's behavior, they requested additional help with booking, which is only done when someone is acting out or showing signs of violence. Officer Dunavan further testified defendant demanded to have his handcuffs removed during booking and stated he was going to beat Officer Bernardi's ass once the cuffs were off. Officer Dunavan reasonably believed defendant was going to harm him if the handcuffs were removed. Sergeant O'Brien told defendant the handcuffs would be removed when he calmed down and took a seat. Officer Dunavan testified it took defendant three to four minutes to calm down.

¶ 19 Sergeant O'Brien testified he also responded to defendant's 911 call because he was close to the area. Officers Dunavan and Bernardi were already at the scene when he arrived. Sergeant O'Brien testified he observed defendant become visibly agitated and verbally

aggressive towards Officer Bernardi. Sergeant O'Brien further noted defendant was actively trying to pull away from Officer Bernardi as he was escorting defendant to the squad car. Due to Officer Bernardi's report of defendant's behavior in the squad car, Sergeant O'Brien went to the public safety building to assist with booking. As they all walked into booking, defendant continued to be verbally aggressive with Officer Bernardi. Defendant was demanding his handcuffs be removed and threatening physical harm to Officer Bernardi once the handcuffs were removed. Additionally, Sergeant O'Brien testified everyone in booking was safe with defendant still in handcuffs.

¶ 20    Yamen testified he was not at home when the police arrived. A police officer picked him up and brought him back home. When he arrived at his house, Yamen saw defendant in handcuffs and arguing with his brothers, Ochein Jr. and Oshar Wilson. Yamen did not see or hear defendant threaten a police officer. According to Yamen, defendant was still arguing with his brothers when the police officers pushed defendant into the squad car. Yamen was not present in the squad car or at the public safety building.

¶ 21    Defendant testified he called 911 and waited on his front porch for the police to arrive. Officer Dunavan called him over, and he walked over to him. According to defendant, most of his conversation was with Officer Dunavan. Officer Bernardi came up from behind him and put the handcuffs on so tight that they cut into his wrist. Defendant told Officer Bernardi both the handcuffs were too tight and he had recent surgery on his left hand. Defendant admitted to cussing at his sons but denied cussing at a police officer. Defendant admitted he was upset he was being arrested when he was the person who called 911. Defendant denied threating any officer in transit to the public safety building. Defendant stated he did repeatedly threaten to sue. At the public safety building, he continued to complain about the fact he was the person who

called 911.  Defendant denied ever threatening to shoot Officer Bernardi or beat him.  He also denied banging his head in the squad car.

¶ 22         The jury instructions specifically related to the charge of threatening a public official the circuit court gave were Illinois Pattern Jury Instructions, Criminal, Nos. 11.49, 11.49A, and 11.50 (approved May 2, 2014) (hereinafter IPI Criminal Nos. 11.49, 11.49A, 11.50).  At the conclusion of the trial, the jury found defendant guilty of threatening a public official.

¶ 23         The circuit court granted defendant additional time to file a posttrial motion.  On January 10, 2018, defendant filed a motion for a new trial, asserting only he was "denied a fair trial of a jury by his peers from law enforcement officers."  Defendant alleged defense counsel would have used a peremptory strike to remove juror Nicholson, a deputy, from the jury if counsel had not needed to use a strike on prospective juror Fox.  According to defendant, the court should have stricken Fox for cause because she would give law enforcement witnesses more credibility than other witnesses.  Also, in January 2018, defendant filed *pro se* a letter complaining about defense counsel's representation of him.

¶ 24                            C. Joint Proceedings

¶ 25         On February 23, 2018, the circuit court held a hearing on several matters.  The court first conducted an inquiry under *People v. Krankel*, 102 Ill. 2d 181, 189, 464 N.E.2d 1045, 1049 (1984), into defendant's claims against defense counsel.  After hearing from defendant and defense counsel, the court declined to appoint defendant new counsel.  The court next addressed defendant's posttrial motion in case No. 523.  After hearing the parties' arguments, the court denied defendant's motion for a new trial.  Last, the court held an evidentiary hearing on the State's amended motion to revoke defendant's probation in case No. 317.  The court found defendant violated his probation based on (1) failing to report for four separate scheduled

probation visits and (2) being convicted of driving while license suspended.

¶ 26 On February 27, 2018, the circuit court held a joint sentencing hearing. Defendant presented the testimony of his son, Ochein Junior. Ochein Junior testified he lived with defendant, his mother Crystal, and six siblings. Due to defendant's incarceration, his mother could not work as much and things in the house were not getting fixed. Defendant was also the person who walked Ochein Junior's sister to school and made her feel safe. Ochein Junior testified the family needed defendant home. Defendant spoke in allocution and stated he did not mean to cause any harm.

¶ 27 In sentencing defendant, the circuit court noted the following factors in aggravation: (1) defendant's conduct caused or threatened serious harm, (2) defendant had a prior criminal history, (3) a sentence was necessary to deter others from committing the same type of crimes, and (4) defendant committed a felony while released on bail and while on probation. The court did not find any mitigating factors applied. The court then resentenced defendant to six years' imprisonment in case No. 317 and sentenced him to a concurrent eight-year prison term in case No. 523.

¶ 28 On March 19, 2018, defendant filed motions to reconsider his sentence. In both cases, he asserted (1) the sentence was overly harsh in light of the circumstances, (2) the circuit court failed to find any factors in mitigation, (3) the court failed to consider the circumstances surrounding the evidence presented at trial and at the hearing on the petition for revocation of probation, and (4) the court failed to consider defendant was likely to comply with the conditions of probation. In case No. 523, defendant also asserted the court failed to consider defendant's character and attitude when he explained he held no ill feelings towards Officer Bernardi and denied threatening to harm him. After an April 3, 2018, hearing, the court denied both motions

- 11 -

to reconsider defendant's sentence.

¶ 29 On April 9, 2018, defendant filed timely notices of appeal in both cases that listed the appealed order as a "Motion to Reconsider." On April 26, 2018, defendant filed timely amended notices of appeal in both cases, listing defendant's conviction and sentence and the denial of his motion to reconsider his sentence as the appealed orders. See Ill. S. Ct. Rs. 606(d), 303(b)(5) (eff. July 1, 2017). Accordingly, this court has jurisdiction of defendant's appeals under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013). In December 2019, this court granted defendant's motion to consolidate the two appeals.

¶ 30                                   II. ANALYSIS

¶ 31                          A. Motion to Strike for Cause

¶ 32 Defendant first argues he is entitled to a new trial because the circuit court erred by refusing to strike a prospective juror for cause which resulted in defense counsel exhausting all peremptory challenges and being unable to excuse a later objectionable juror. The State contends we should not address the actual merits of the circuit court's refusal to strike the prospective juror for cause because defendant fails to show an objectionable juror was forced upon him. Defendant claims he preserved his claim for review because he asked for an additional peremptory challenge to strike an objectionable juror and disagrees with the State's definition of an "objectionable juror." We agree with the State's definition and decline to address the merits of defendant's argument.

¶ 33 We begin our analysis by examining the right to a jury trial. A criminal defendant's right to a jury trial includes a fair trial by a panel of impartial jurors. *People v. Peeples*, 155 Ill. 2d 422, 462, 616 N.E.2d 294, 312 (1993). "[I]mpartiality is a state of mind, or a mental attitude." *Peeples*, 155 Ill. 2d at 462, 616 N.E.2d at 312. "A person is not competent to

- 12 -

sit as a juror if his state of mind or mental attitude is such that, with him as a member of the jury, the defendant will not receive a fair and impartial trial." *Peeples*, 155 Ill. 2d at 463, 616 N.E.2d at 313. A prospective juror's state of mind must be ascertained from the statements made by the prospective juror during *voir dire*, given the weight to which the statements are entitled under the circumstances. *Peeples*, 155 Ill. 2d at 462, 616 N.E.2d at 312. Moreover, the court should consider the prospective juror's entire *voir dire* examination and not consider statements in isolation. *Peeples*, 155 Ill. 2d at 462-63, 616 N.E.2d at 312-13. The function of *voir dire* is to secure an impartial jury and not to enable the defendant to select particular jurors. *Peeples*, 155 Ill. 2d at 463, 616 N.E.2d at 313.

¶ 34    The State essentially asserts we do not need to address whether the circuit court erred by refusing to strike the prospective juror because defendant has not shown prejudice from the alleged error. In *People v. Green*, 199 Ill. App. 3d 927, 930, 557 N.E.2d 939, 941 (1990), the State argued that, even if the prospective juror should have been excused for cause, the defendant was not prejudiced and therefore no reversible error existed. In addressing the issue, this court quoted the following language from our supreme court:

> " 'We cannot reverse this judgment for errors committed in the lower court in overruling challenges for cause to jurors, even though defendants exhausted their peremptory challenges unless it is further shown that an objectionable juror was forced upon them and sat upon the case after they had exhausted their peremptory challenges.' " *Green*, 199 Ill. App. 3d at 930, 557 N.E.2d at 941 (quoting S*pies v. People*, 122 Ill. 1, 258, 12 N.E. 865, 989 (1887)).

We then stated the *Spies* holding was applied in *People v. Washington*, 104 Ill. App. 3d 386, 392, 432 N.E.2d 1020, 1025 (1982), and noted the following language from *Washington*:

" 'In the present case, the defense exhausted its peremptory challenges, but it did not indicate to the trial court that it was being forced to accept an objectionable juror because of the error in overruling the prior challenge for cause. Notifying the trial court of this fact would have served the salutary purpose of giving the court a final opportunity to cure the alleged error by exercising its inherent power to grant the defense an extra peremptory challenge. Because the defense in the present case did not indicate that it was being forced to accept an objectionable juror as a result of the trial court's error, we hold that the error in denying the challenge for cause was waived.' " *Green*, 199 Ill. App. 3d at 930-31, 557 N.E.2d at 941 (quoting *Washington*, 104 Ill. App. 3d at 392, 432 N.E.2d at 1025).

The *Green* court also recognized a prior case, in which this court stated the following: " 'Plaintiff fully preserved his claim of error by exercising all his allotted peremptory challenges, asking for additional peremptories, and *making a motion for a mistrial*.' " (Emphasis added.) *Green*, 199 Ill. App. 3d at 931, 557 N.E.2d at 941-42 (quoting *Marcin v. Kipfer*, 117 Ill. App. 3d 1065, 1067, 454 N.E.2d 370, 372 (1983)). Applying the aforementioned cases, this court found defendant was precluded from asserting his claim because the defendant did not ask for an additional peremptory strike or indicate he would have excused a juror if he had any left. *Green*, 199 Ill. App. 3d at 931, 557 N.E.2d at 942.

¶ 35       Later, in *People v. Reid*, 272 Ill. App. 3d 301, 309, 649 N.E.2d 593, 599 (1995), the reviewing court was asked to consider whether a circuit court had the inherent authority to grant an additional peremptory challenge. In addressing the issue, it stated the following:

"Assuming, *arguendo*, the trial judge in this case had such discretion,

- 14 -

there would be no prejudicial error. The defendant made no showing that an 'objectionable juror' was forced on her after she exhausted her peremptory challenges. [Citations.]

An 'objectionable juror' has been defined as 'a juror who should have been dismissed for cause—one who would prejudice the case.' (*Flynn v. Edmonds* (1992), 236 Ill. App. 3d 770, 782, 602 N.E.2d 880[, 887].) The defendant takes the position that an 'objectionable juror' is anyone she did not want on her jury. We do not agree. There must be some attempt to persuade the trial judge that a juror the defendant was required to accept could not be fair and impartial. The failure to make such a showing forecloses further consideration of the issue." *Reid*, 272 Ill. App. 3d at 309, 649 N.E.2d at 599.

The *Reid* court quoted the "objectionable juror" definition from *Flynn*, which was a decision by this court. The *Flynn* court explained the definition of an "objectionable juror" came from a review of the supreme court's decision in *Spies*. *Flynn*, 236 Ill. App. 3d at 782, 602 N.E.2d at 887.

¶ 36     Defendant challenges our definition in *Flynn* and urges us to follow *Green*. We find our definition in *Flynn* is consistent with relevant case law and continue to follow it. As previously stated, the function of *voir dire* is to secure an impartial jury and not to enable the defendant to select particular jurors. *Peeples*, 155 Ill. 2d at 463, 616 N.E.2d at 313. If the juror for whom the defendant could not exercise a peremptory challenge is fair and impartial, the defendant's right to a jury trial has not been violated. Moreover, the *Flynn* definition is consistent with the supreme court's decision in *Spies*. There, the supreme court stated the following:

- 15 -

"We think it must be made to appear that an objectionable juror was put upon the defendants after they had exhausted their peremptory challenges. 'Unless objection is shown to one or more of the jury who *tried* the case, the antecedent rulings of the court upon the competency or incompetency of jurors, who have been challenged and stood aside, will not be inquired into in this court.' " (Emphasis in original.) *Spies*, 122 Ill. at 257-58, 12 N.E. at 989 (quoting *Holt v. State*, 9 Tex. App. 571, 580 (1880)).

To the extent our decision in *Green* suggests a different definition of objectionable juror than the decision we set forth in *Flynn*, we no longer follow *Green*. However, in our view, the *Green* court never needed to address the definition of an objectionable juror because the defendant never indicated he would have excused one of the jurors. Moreover, we agree with the *Reid* decision's holding the failure to make a showing the juror for which the defendant desired to strike was not fair and impartial forecloses further consideration of the court's ruling related to an earlier prospective juror. *Reid*, 272 Ill. App. 3d at 309, 649 N.E.2d at 599.

¶ 37        Here, defendant did not make a showing in the circuit court and on appeal juror Nicholson for whom he desired to strike with a peremptory challenge was not fair or impartial, and thus we do not address the merits of defendant's claim the circuit court erred by not striking prospective juror Fox for cause.

¶ 38                    B. Ineffective Assistance of Counsel

¶ 39        Defendant next argues he received ineffective assistance of counsel because defense counsel elicited the State's only evidence Officer Bernardi felt apprehension of future bodily harm by defendant's statement he was going to shoot Officer Bernardi in the face. The State disagrees, asserting, *inter alia*, cross-examination of a witness is a matter of trial strategy.

¶ 40      This court analyzes ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). To obtain reversal under *Strickland*, a defendant must prove (1) his counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. Further, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64.

¶ 41      In this case, the State alleged defendant committed the offense of threatening a public official, which a person commits when the following occurs: "(1) he knowingly and willfully communicates, directly or indirectly, a threat to a public official; (2) the threat would place the public official in reasonable apprehension of immediate or future bodily harm; and (3) the threat was related to the official's public status." *People v. Kirkpatrick*, 365 Ill. App. 3d 927, 930, 851 N.E.2d 276, 279 (2006) (citing 720 ILCS 5/12-9(a)(1)(i), (a)(2) (West 2000)). Additionally, when a threat was made to a sworn law enforcement officer, "the threat must contain specific facts indicative of a unique threat to the person, family or property of the officer and not a generalized threat of harm." 720 ILCS 5/12-9(a-5) (West 2016). At issue with this

claim is whether defendant's threat placed Officer Bernardi in reasonable apprehension of immediate or future bodily harm. Defendant claims his trial counsel elicited the only evidence defendant's threat caused Officer Bernardi apprehension of future bodily harm.

¶ 42    First, we disagree with defendant's contention defendant's testimony on cross-examination was the only evidence of the element of reasonable apprehension of future bodily harm. On direct examination, Officer Bernardi testified he took defendant making the statement about shooting him in the face as an aggressive action and a threat. Officer Bernardi explained, "if this guy gets the upper hand, he will be aggressive, possible, or try and attempt to hurt me." Moreover, reasonable apprehension may be inferred from the facts and circumstances of the case, including the conduct of both the defendant and the recipient of the threat. See *In re C.L.*, 180 Ill. App. 3d 173, 181, 534 N.E.2d 1330, 1337 (1989) (addressing reasonable apprehension of a battery). Officer Bernardi's reporting defendant's actions to dispatch and seeking assistance to get defendant into booking are indicative Officer Bernardi was scared of defendant and took his threat seriously.

¶ 43    Second, defense counsel's questions on cross-examination were a matter of trial strategy. Generally, allegations of ineffective representation regarding cross-examination of witnesses are questions of trial strategy, the exercise of professional judgment, and matters within defense counsel's discretion and, as such, are not subject to review. *People v. Williams*, 246 Ill. App. 3d 1025, 1035, 617 N.E.2d 87, 95 (1993) (citing *People v. Harris*, 123 Ill. 2d 113, 157, 526 N.E.2d 335, 354 (1988)). "Review of trial tactics or strategy will generally not extend to these areas 'even where appellate counsel or the reviewing court might have handled the matter differently.' " *Williams*, 246 Ill. App. 3d at 1035, 617 N.E.2d at 95 (quoting *People v. Barfield*, 187 Ill. App. 3d 190, 197, 543 N.E.2d 812, 816 (1989)). " '[T]he fact that a tactic in

- 18 -

retrospect proved unsuccessful does not demonstrate incompetence.' " *Williams*, 246 Ill. App. 3d at 1035, 617 N.E.2d at 95 (quoting *Barfield*, 187 Ill. App. 3d at 197, 543 N.E.2d at 816). When reviewing defense counsel's cross-examination of Officer Bernardi as a whole, it is clear defense counsel was expecting Officer Bernardi to answer he was not actually scared by defendant's statement. The prior questions had pointed out defendant was in the back of a squad car, did not have a gun, and Officer Bernardi had never dealt with defendant off-duty. The fact Officer Bernardi did testify he was scared of defendant does not render defense counsel's performance deficient.

¶ 44          Accordingly, we find defendant has failed to establish the deficiency prong of the *Strickland* test and thus defendant was not denied effective assistance of counsel.

¶ 45                              C. Due Process

¶ 46          Defendant also appears to argue he was denied due process when the State argued the jury could convict him of threatening a public official based upon statements other than the one charged and the circuit court did not instruct the jury on what statement was the basis for the charged offense. Defendant acknowledges he did not raise the issue in the circuit court and asks us to review the issue under the plain-error doctrine (Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967)). In the alternative, defendant argued defense counsel was ineffective for failing to object to the improper instruction and improper argument. The State asserts defendant should be barred from raising the issue on appeal. On the merits, the State contends defendant was not and could not have been convicted of an uncharged offense of threatening a public official.

¶ 47          The plain-error doctrine permits a reviewing court to consider unpreserved error under the following two scenarios:

          "(1) a clear or obvious error occurred and the evidence is so closely balanced that

- 19 -

the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189, 940 N.E.2d 1045, 1058 (2010).

¶ 48        We begin a plain-error analysis by first determining whether any error occurred at all. *Sargent*, 239 Ill. 2d at 189, 940 N.E.2d at 1059. If error did occur, this court then considers whether either of the two prongs of the plain-error doctrine has been satisfied. *Sargent*, 239 Ill. 2d at 189-90, 940 N.E.2d at 1059. Under both prongs, the defendant bears the burden of persuasion. *Sargent*, 239 Ill. 2d at 190, 940 N.E.2d at 1059. Defendant contends the errors meet both prongs.

¶ 49        As to the jury instruction, " '[t]he sole function of instructions is to convey to the minds of the jury the correct principles of law applicable to the evidence submitted to it in order that, having determined the final state of facts from the evidence, the jury may, by the application of proper legal principles, arrive at a correct conclusion according to the law and the evidence.' " *People v. Nere*, 2018 IL 122566, ¶ 29, 115 N.E.3d 205 (quoting *People v. Ramey*, 151 Ill. 2d 498, 535, 603 N.E.2d 519, 534 (1992)). Generally, we review whether the circuit court erred in refusing a particular jury instruction under an abuse of discretion standard. *Nere*, 2018 IL 122566, ¶ 29. However, whether a particular jury instruction accurately conveyed to the jury the law applicable to the case is an issue we review *de novo*. *Nere*, 2018 IL 122566, ¶ 29.

¶ 50        Here, the circuit court gave the instruction based on IPI Criminal 4th Nos. 11.49 and 11.50. Illinois Supreme Court Rule 451(a) (eff. Apr. 8, 2013) provides, in pertinent part, the

following:

"Whenever Illinois Pattern Jury Instructions, Criminal, contains an instruction applicable in a criminal case, giving due consideration to the facts and the governing law, and the court determines that the jury should be instructed on the subject, the IPI Criminal instruction shall be used, unless the court determines that it does not accurately state the law."

Neither IPI Criminal 4th No. 11.49 nor IPI Criminal 4th No. 11.50 provide for the identification of the defendant's action that constituted the threat. Thus, the court's jury instructions did comply with IPI Criminal 4th Nos. 11.49 and 11.50.

¶ 51 Defendant appears to suggest IPI Criminal 4th Nos. 11.49 and 11.50 did not accurately state the law because they did not identify defendant's statement that constituted the threat which formed the basis of the charge. Defendant asserts this inaccuracy led to the possibility of him being convicted of an uncharged offense of threatening a public official based on the uncharged statements. This matter also involves the consideration of the prosecutor's alleged improper argument. Defendant suggests his other statements to Officer Bernardi were irrelevant to establishing the elements of threatening a public official and should not have been noted by the prosecutor. However, as previously stated, reasonable apprehension may be inferred from the facts and circumstances of the case, including the conduct of both the defendant and the recipient of the threat. See *C.L.*, 180 Ill. App. 3d at 181, 534 N.E.2d at 1337. Thus, defendant's other statements are relevant to proving reasonable apprehension and the other three elements of the charged offense. Moreover, in both opening statement and the initial closing argument when read as a whole, the prosecutor highlighted the statement noted in the charging document and did not lump it together with the other statements. It was defense

counsel who first lumped the statements together in closing argument and noted defendant denied making all of them.

¶ 52 Additionally, in support of his argument, defendant cites *People v. Kolton*, 219 Ill. 2d 353, 359, 848 N.E.2d 950, 954 (2006), in which the supreme court recognized a criminal defendant had a fundamental due process right to notice of the charges brought against him, and thus, a defendant cannot be convicted of an offense he has not been charged with committing. However, in that case, the defendant was charged with predatory criminal sexual assault of a child but was found guilty of aggravated criminal sexual abuse. *Kolton*, 219 Ill. 2d at 356, 848 N.E.2d at 952. In this case, defendant was found guilty of the charged crime, not a different crime. Thus, the *Kolton* decision does not support defendant's argument.

¶ 53 Accordingly, we find defendant has failed to show any errors, and thus we do not address plain error and whether the alleged errors resulted in the denial of defendant's rights to due process and counsel.

¶ 54                                        D. Sentencing

¶ 55 Defendant last contends both of his sentences were excessive. Specifically, he argues the circuit court erred by (1) considering defendant's conduct caused serious harm as an aggravating factor because it was a factor inherent in the offenses of aggravated domestic battery and threatening a public official, (2) rejecting his mitigation evidence, and (3) failing to consider the defendant's rehabilitative potential. The State disagrees.

¶ 56 The Illinois Constitution mandates "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. In sentencing a defendant, the circuit court must consider a number of statutory aggravating and mitigating factors. See 730 ILCS 5/5-5-3.1,

5-5-3.2 (West 2014). However, "the seriousness of an offense is considered the most important factor in determining a sentence." *People v. Jackson*, 2014 IL App (1st) 123258, ¶ 53, 23 N.E.3d 430.

¶ 57        With excessive-sentence claims, this court has explained appellate review of a defendant's sentence as follows:

"A trial court's sentencing determination must be based on the particular circumstances of each case, including factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Generally, the trial court is in a better position than a court of review to determine an appropriate sentence based upon the particular facts and circumstances of each individual case. [Citation.] Thus, the trial court is the proper forum for the determination of a defendant's sentence, and the trial court's decisions in regard to sentencing are entitled to great deference and weight. [Citation.] Absent an abuse of discretion by the trial court, a sentence may not be altered upon review. [Citation.] If the sentence imposed is within the statutory range, it will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *People v. Price*, 2011 IL App (4th) 100311, ¶ 36, 958 N.E.2d 341 (quoting *People v. Hensley*, 354 Ill. App. 3d 224, 234-35, 819 N.E.2d 1274, 1284 (2004)); see also *People v. Alexander*, 239 Ill. 2d 205, 212, 940 N.E.2d 1062, 1066 (2010).

The sentencing range for the Class 2 felony of aggravated domestic battery is three to seven years (730 ILCS 5/5-4.5-35(a) (West 2014)). At defendant's sentencing hearing, the State

- 23 -

asserted without objection defendant was extended term eligible for the offense of threatening a public official and the applicable sentencing range was 2 to 10 years' imprisonment. See 730 ILCS 5/5-4.5-40(a) (West 2016). Thus, defendant's sentences of six years for aggravated domestic battery and eight years for threatening a public official were within the proper statutory ranges.

¶ 58     Regarding aggravating factors, the circuit court must not consider an element that is inherent in the offense as an aggravating factor when sentencing a defendant. *People v. Brown*, 2019 IL App (5th) 160329, ¶ 18. "Nevertheless, the trial judge 'need not unrealistically avoid any mention of such inherent factors, treating them as if they did not exist.' " *Brown*, 2019 IL App (5th) 160329, ¶ 18 (quoting *People v. O'Toole*, 226 Ill. App. 3d 974, 992, 590 N.E.2d 950, 962 (1992)). When reviewing a sentence for an alleged error based upon the consideration of an improper factor in aggravation, the reviewing court considers the record as a whole and does not focus merely on a few words or statements by the trial judge. *Brown*, 2019 IL App (5th) 160329, ¶ 18. We note "[a]n isolated remark made in passing, even though improper, does not necessarily require that [the] defendant be resentenced." (Internal quotation marks omitted.) *Brown*, 2019 IL App (5th) 160329, ¶ 18 (quoting *People v. Reed*, 376 Ill. App. 3d 121, 128, 875 N.E.2d 167, 174 (2007)). To receive a new sentencing hearing, the defendant must show more than the mere mentioning of the improper factor in aggravation; rather, the defendant must demonstrate the trial judge relied upon the improper factor in fashioning the defendant's sentence. *Brown*, 2019 IL App (5th) 160329, ¶ 18.

¶ 59     Here, the circuit court did list defendant's conduct caused or threatened serious harm in stating the statutory factors in aggravation. However, the court did not mention it again. The court expressly emphasized the serious nature of both offenses. Moreover, in not

resentencing defendant to probation, the court noted the nature and circumstances of the offense and defendant's history, character, and condition. The court did not point out defendant's conduct threatened serious harm. Additionally, defendant had a criminal history and committed several offenses while on probation. Thus, we find the court's comment was an isolated remark, and the record does not reflect the court relied on the factor in fashioning defendant's ultimate sentences. Accordingly, we do not find defendant is entitled to resentencing on either charge.

¶ 60     While the circuit court recognized defendant presented mitigating evidence, it found no statutory mitigating factors applied in defendant's case. Section 5-5-3.1 of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-5-3.1 (West 2014)) lists 17 grounds and provides those "grounds shall be accorded weight in favor of withholding or minimizing a sentence of imprisonment." In his brief, defendant summarizes his mitigation evidence but does not identify any applicable statutory mitigating factors. He also cites *People v. Markiewicz*, 246 Ill. App. 3d 31, 56, 615 N.E.2d 869, 886 (1993), where the reviewing court found the sentencing judge abused its discretion by failing to consider mitigating evidence in sentencing. There, on more than one occasion, the sentencing judge indicated it would not consider the defendant's mitigating evidence because it did not fit into any of the categories enumerated in section 5-5-3.1 of the Unified Code. *Markiewicz*, 246 Ill. App. 3d at 55, 615 N.E.2d at 886. In this case, the record demonstrates the circuit court did consider the mitigating evidence. However, it found the mitigating evidence did not rise to the level of a statutory mitigating factor and further noted the aggravating factors outweighed the mitigating factors. Thus, the court did not disregard the mitigating evidence as in *Markiewicz*.

¶ 61     As to defendant's rehabilitative potential, defendant simply asserts the circuit court must have failed to consider it since defendant's sentences were near the maximums.

However, the record does not demonstrate the court failed to consider defendant's rehabilitative potential. Given the seriousness of the offenses and defendant's criminal history, we do not find the circuit court abused its discretion in sentencing defendant to concurrent prison terms of six and eight years.

¶ 62                                    III. CONCLUSION

¶ 63            For the reasons stated, we affirm the Vermilion County circuit court's judgment.

¶ 64            Affirmed.